Argued and submitted May 22, 1997, affirmed February 4, 1998

In the Matter of the Compensation of
Trevor E. Shaw, Claimant.

Trevor E. SHAW,
*Petitioner,*

*v.*

Thom and Dorothy REBHOLZ,
and Mid-Century Insurance Company,
*Respondents.*

(94-10424; CA A89711)

954 P2d 190

Donald M. Hooton argued the cause and filed the brief for petitioner.

Vera Langer argued the cause for respondents. With her on the brief was Scheminske, Lyons & Bussman, LLP.

Michael O. Whitty filed a brief *amicus curiae* for SAIF Corporation and Timber Products.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

**LANDAU, J.**

Claimant seeks review of an order of the Workers' Compensation Board (Board) denying claimant temporary disability benefits beyond the date he became medically stationary. Claimant contends that the Board is precluded from determining that he is not entitled to benefits after that date because, in an earlier proceeding, it concluded that employer had improperly terminated his temporary disability benefits. We conclude that the Board correctly determined that it is not precluded from determining claimant's entitlement to temporary disability benefits and affirm.

We take the relevant, undisputed facts from the Board's order. On April 30, 1993, claimant suffered a compensable low back injury. He was treated by Dr. Sedgwick, his attending physician. Employer accepted the claim and began paying temporary total disability benefits. On May 20, 1993, Sedgwick noted that claimant should follow up with him in two weeks and anticipated that claimant would be able to return to regular work at that time. Claimant did not follow up with Sedgwick, as requested. On June 3, 1993, claimant instead saw Dr. Barnhouse, who gave claimant a release for regular work on June 7, 1993, and scheduled a follow-up appointment for June 18, 1993. Claimant did not follow up with Barnhouse either. On the basis of Barnhouse's release to regular work, employer unilaterally terminated temporary total disability payments.

Claimant sought a hearing on the termination of those benefits, contending that employer lacked authority to terminate unilaterally his temporary total disability benefits. Employer argued that it was authorized to terminate benefits under the version of ORS 656.268(3)(b) in effect at the time, which provided for unilateral termination by the employer when "[t]he attending physician gives the worker a written release to return to regular employment."[1] The Board ultimately concluded that claimant was correct. The Board found that, because Barnhouse was not claimant's attending physician at the time of his June 7, 1993, release, that release

---

[1] Amendments to the statute in 1995 do not affect the arguments before us.

did not suffice to authorize employer to terminate temporary total disability benefits under ORS 656.268(3)(b) (1991). The Board further found that, because Sedgwick's chart note was not actually given to claimant, it cannot qualify as a "written release" within the meaning of ORS 656.268(3)(b) (1991). The Board ordered employer to continue paying benefits "until properly terminated according to law."

Meanwhile, employer closed the claim by notice of closure dated January 17, 1994, awarding temporary disability through June 6, 1993. Claimant sought reconsideration and, later, a hearing. The Board ultimately held that claimant was not entitled to temporary total disability benefits beyond June 6, 1993, because he failed to demonstrate that he was disabled beyond that date. The Board's order affirmed the award of temporary disability benefits through June 6, 1993. It is that order that claimant challenges on review.

■ Claimant argues that principles of issue preclusion prevent the Board from examining the extent to which claimant was disabled beyond June 6, 1993. According to claimant, when he originally challenged employer's unilateral termination of his temporary total disability benefits as of June 7, 1993, whether he remained disabled was put in issue. And, he argues, when the Board concluded that he was entitled to temporary disability benefits "until properly terminated according to law," his disability necessarily was established because he could not have been entitled to such benefits unless he were disabled in the first place.

Employer argues that, because the only issue properly before the Board in the initial proceeding was whether employer had satisfied the statutory requirements for unilaterally terminating benefits, the separate issue of whether claimant, in fact, was disabled was not actually litigated by the parties nor even necessary to a disposition of the matter before the Board. Accordingly, employer concludes, principles of issue preclusion do not prevent it from challenging in the later proceeding—in which claimant's disability was directly at issue—the extent to which claimant was disabled after June 6, 1993.

In *Washington Cty. Police Officers v. Washington Cty.*, 321 Or 430, 435, 900 P2d 483 (1995), the Supreme Court

explained that a decision in a prior proceeding may preclude relitigation of the issue in another proceeding if five requirements are met: (1) The issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect.

In this case, employer accepted claimant's claim and began paying temporary total disability payments in response to the authorization of claimant's attending physician. When employer attempted to terminate those benefits unilaterally, claimant requested a hearing, and the sole issue before the Board was whether employer had satisfied the statutory conditions for doing so. Whether claimant remained disabled was not contested by any party and was not actually litigated in that first proceeding. The sole issue on which the Board made any findings and expressed any conclusion was whether employer had satisfied the requirements of the law for unilaterally terminating temporary total disability benefits, specifically, whether claimant had been released for regular work by his attending physician. ORS 656.268(3)(b) (1991).

■■  The second proceeding, the one now before us on review, concerns the determination of the amount of claimant's temporary disability benefits at the time of closure. *See* ORS 656.268(4)(b) (insurer or employer shall issue notice of closure advising parties of the "amount of any further compensation, including permanent disability compensation to be awarded [and] of the amount and duration of temporary total or temporary partial disability compensation"). That determination is based on the extent to which claimant demonstrates continuing disability during the pendency of the open claim, which demonstration occurs only after the claim is closed. *SAIF v. Taylor*, 126 Or App 658, 660-61, 870 P2d 245 (1994). Employer was not required to litigate, while a claim was still open, an issue that did not arise until the claim was closed. *Hewlett-Packard Co. v. Leonard*, 151 Or App 307, 311, 948 P2d 1256 (1997).

Claimant insists that the distinction between his entitlement to temporary disability benefits during the pendency of the open claim and his entitlement to the benefits at closure relies on a distinction between "substantive" and "procedural" entitlements that has been legislatively overruled. We have rejected that argument. *See, e.g., Santos v. Caryall Transport,* 152 Or App 322, 326-27, 954 P2d 187 (1998).

We conclude that the issues in the first proceeding and the one before us on review were not identical and that the extent to which claimant was disabled beyond June 6, 1993, was neither actually nor necessarily litigated in that proceeding. The Board therefore correctly concluded that it was not precluded from examining the extent to which claimant remained disabled after June 6, 1993, in this proceeding.

Affirmed.