Argued and submitted April 16; resubmitted En Banc October 14, 1998, reversed
and remanded for reconsideration March 17, petition for review allowed
August 10, 1999 (329 Or 319)

In the Matter of the Compensation of
Kenneth P. Bundy, Claimant.

FRED MEYER, INC.,
*Petitioner,*

*v.*

Kenneth P. BUNDY
and Department of Consumer and Business Services,
*Respondents.*

(95-07510; CA A95905)

978 P2d 385

Craig A. Staples argued the cause and filed the briefs for petitioner.

Roger Ousey argued the cause for respondent Kenneth P. Bundy. With him on the brief was Bischoff, Strooband & Ousey, P. C.

No appearance for respondent Department of Consumer and Business Services.

David L. Runner filed a brief *amicus curiae* for SAIF Corporation and Timber Products Company.

Deborah L. Sather, Tracy J. White, and Krishna Balasubramani filed a brief *amicus curiae* for Northwest Natural Gas, Precision Castparts Corp., Safeco Insurance Co., and Freightliner Corporation.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, Judges, and Warren, Senior Judge.

EDMONDS, J.

Wollheim, J., dissenting.

### EDMONDS, J.

Employer seeks review of a Workers' Compensation Board (Board) order ruling that claimant is entitled to temporary disability benefits as of May 11, 1993. We review for errors of law, ORS 656.298(7) and ORS 183.482(8), and reverse.

Claimant has a compensable right wrist condition. The claim was initially closed in 1992. In May 1993, claimant filed an aggravation claim and a request for surgery, which employer denied. The denial was set aside by the Hearings Division, and employer appealed to the Board, which affirmed. That order has become final. In May 1995, claimant requested temporary disability benefits. On May 24, 1995, claimant's attending physician authorized the payment of temporary partial disability (TPD) compensation from November 1992 through April 1995. Employer acknowledged receipt of the authorization, but paid no TPD. In August 1995, employer issued a notice of closure that was subsequently affirmed on reconsideration. The order awarded TPD from April 25, 1995, to August 3, 1995, the date that claimant had become medically stationary. Claimant requested a hearing on the order on reconsideration, arguing that he was entitled to TPD beginning on May 11, 1993, the date the aggravation claim was made. The Board agreed with claimant's argument, and employer seeks review.

Employer argues that:

"The 1995 Legislature determined, by enacting ORS 656.262(4)(g),[1] that an attending physician may not retroactively establish a claimant's entitlement to temporary disability benefits for any period unless he has authorized the disability within 14 days of such period. The Board majority erred in concluding that this provision applies

---

[1] During the time in question, the statute was numbered ORS 656.262(4)(f). In 1997, ORS 656.262(4)(f) (1995) was renumbered to ORS 656.262(4)(g). Or Laws 1997, ch 639, § 7. We refer to it by its current number.

only to an employer's procedural obligation to pay temporary disability while a claim is open and does not also govern the claimant's ability to establish substantive entitlement to such benefits upon claim closure." (Internal footnote omitted.)

In response to employer's argument, claimant asserts:

"The changes made to Chapter 656 by Oregon Law 1995, Chapter 332 should not be retroactively applied to this claim. However, if the provisions of Oregon Laws 1995, Chapter 332 are applicable, the 1995 revisions to ORS 656.262 did not eliminate the distinction between procedural and substantive temporary disability. Even if the amendments did abolish the distinction, the limitation on retroactive authorization does not apply to the present case where the claimant had been seen by the attending physician for several years. The legislature intended to prohibit retroactive authorization for cases involving initial claims. In the present case, the worker had seen his attending physician to obtain ongoing treatment for the same condition for a period of five years."

1. The meaning of ORS 656.262(4)(g) is the focal point of the parties' arguments. It provides:

"Temporary disability compensation is not due and payable pursuant to ORS 656.268 after the worker's attending physician ceases to authorize temporary disability or for any period of time not authorized by the attending physician. No authorization of temporary disability compensation by the attending physician under ORS 656.268 shall be effective to retroactively authorize the payment of temporary disability more than 14 days prior to its issuance."

ORS 656.262(4)(g) was enacted by the legislature in 1995. Senate Bill 369; Or Laws 1995, ch 332. ORS 656.262(4)(g) was enacted while this claim was in litigation. Therefore, the amendment applies. *Jensen v. Conagra, Inc.,* 152 Or App 449, 954 P2d 822 (1998);[2] *Volk v. America West*

---

[2] We held in *Jensen* that ORS 656.262(4)(g) applied retroactively to existing claims and that the statute, "creates a limit on the amount of retroactive benefits to which claimant is entitled, *i.e.*, two weeks. That limit, defining as it does a claimant's rights, is substantive." 152 Or App at 453.

*Airlines*, 135 Or App 565, 899 P2d 746 (1995), *rev den* 322 Or 645 (1996).

■      The remaining issue in this case is whether ORS 656.262(4)(g) applies to only procedural obligations to pay temporary disability while a claim is open, or whether it also applies to the substantive entitlement to benefits at claim closure. The Board ruled that ORS 656.262(4)(g) is only an additional requirement for the authorization of procedural temporary disability compensation during an open claim. It reasoned that, because the terms in the statute are in the present tense and thereby address the contemporaneous payment of compensation while the claim is in open status, it follows that the statute does not apply to awards of temporary disability made at the time of closure. The Board noted that a claimant's entitlement to temporary disability benefits under ORS 656.210 and ORS 656.212 was not amended in 1995 in any way that was material to the meaning of ORS 656.262(4)(g) and that neither ORS 656.210 nor ORS 656.212 contains any language that limits a worker's substantive entitlement to temporary disability to only those periods for which there has been contemporaneous authorization by the attending physician. Based on that reasoning, the Board concluded that ORS 656.262(4)(g)'s restriction on the authorization of temporary disability benefits was inapplicable to claimant's claim for substantive temporary disability benefits.

The pertinent statutes are reasonably susceptible to the construction given to them by the Board. However, that conclusion does not end the inquiry. In interpreting a statute, our task is to discern the intent of the legislature. ORS 174.020. The text of the statutory provision itself is the starting point for interpretation because it is the best evidence of the legislature's intent. We also consider the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes as well as rules of construction of the statutory text that bear directly on how to read the text. If the legislature's intent is clear from such an inquiry, there is no need to go further. It is with those rules in mind that we examine ORS 656.262(4)(g) to determine whether the Board's interpretation is the only reasonable construction of the meaning of ORS 656.262(4)(g).

On its face, ORS 656.262(4)(g) is not limited to benefits that are due and payable during the time that the claim is open. The first sentence in the statute tells the reader when temporary disability compensation is not due and payable; the second sentence in the statute restricts the retroactive authorization of temporary disability compensation to a time period of not more than 14 days. The fact that the verbs in the statute are in the present tense does not negate the possibility that the statute also applies to awards of time loss[3] made at claim closure. Whether time loss is awarded while a claim is open or at closure will always be an act that occurs contemporaneously to the overall processing of the claim. Moreover, the reference to ORS 656.268 in both sentences is a reference to a statute that addresses the process of claim closure. Finally, the fact that ORS 652.210 and ORS 656.212, statutes regarding the substantive entitlement to temporary disability, remain unchanged is not determinative of the issue. The legislature could well have intended that the requirements in those statutes remain the same, while intending to superimpose upon them a limitation on the retroactive award of such benefits. We conclude, based on the above examination, that the intent of the legislature is not clear from the text and the context of ORS 656.262(4)(g).[4] In light of its language, the legislature could have intended that the 14-day restriction on TPD apply to both procedural and substantive time loss.

As a result of the purpose of the legislature not being clearly discernable from the text and context of ORS 656.262(4)(g), we consider the legislative history underlying the statute. Our review of the legislative history discloses that the changes in ORS 656.268 were "intended to preclude a closure order from making a substantive award of time-loss benefits for any period of time during which procedurally the time-loss benefits were lawfully suspended or withheld or

---

[3] For purposes of this opinion and in the legislative history, "time loss" is a term encompassed in the term "temporary disability" compensation or TPD.

[4] Apparently, the dissent would hold that when the legislature used ORS 656.268 in the language of ORS 656.262(4)(g), it really meant to say "ORS 656.268(3)(d)." Presumably, the legislature knows how to specifically incorporate a subsection of a statute into another statute. If the legislature had intended ORS 656.262(4)(g) to incorporate only ORS 656.268(3)(d), it would have said so.

terminated." Tape recording, Joint Meeting of Senate Committee on Labor and Government Operations and House Committee on Labor, February 1, 1995, Tape 19A.

In addition, the following exchange took place at a legislative committee meeting on Senate Bill 369:

"[Representative Kevin Mannix addressing Senator Randy Leonard]: You were surprised, and I think even shocked, that it could be possible under the act that a physician could do retroactive time loss. Senator, it happens. And, we've been required to respond to it. And, we've been penalized for not paying it—periods of time during which the time loss might have been monitored, the worker's medical condition might have been reported on, but it wasn't. We end up getting a retroactive authorization for—I have seen two years of time loss, I have seen more.

"[Senator]: Retroactive?

"[Jerry Keene]: Doctor says, I'm going back two years to authorize time loss even though I haven't seen you. This says you can go back fourteen days.

"[Senator]: Just give me the example.

"[Keene]: Worker files a claim based on a recent visit to a physician and says, I had this problem a couple of years ago * * * and doctor says, in my opinion, this person couldn't work as of a year ago based on that condition or injury.

"[Senator]: Evaluation today?

"[Keene cont.]: And I'm authorizing retroactive time loss. This section says you can't do that more than fourteen days back. If somebody is that badly off that they need time loss, they should see a physician to get authorization for the time loss. And it's reasonable for someone who has been hurt— they went home for a few days, they were in bed and weren't getting [doctor's care]—to take a few days to get to the doctor so that's why the fourteen days * * *.

"[Senator]: Actually that was clarified to me after I asked the questions. Well, that kind of a situation—yes, you could get hurt and then later go to the doctor and it could be a few days. So that actually made sense.

"* * * * *

"[Keene cont.]: This does not affect the time limit for making a claim. It just affects how far back a doctor can give you time loss.

"[Senator]: For time loss. I see. Okay." Tape recording, Joint Meeting of Senate Committee on Labor and Government Operations and House Committee on Labor, February 17, 1995, Tape 48B.

Later, Mannix stated in support of the bill:

"* * * [T]here have been ludicrous situations where the worker doesn't go to a physician for a couple of months on the initial claim, and the physician said, oh yeah, I'll retroactively authorize time loss all the way back. This makes it clear that you can only do that up to 14 days. If someone really needed to be off work, they should be seeing an attending physician." Tape Recording, House Committee on Labor, March 6, 1995, Tape 46A.

As indicated previously, ORS 656.268 addresses the process of claim closure, including the procedure for determining awards of permanent disability, termination of temporary total disability and the events that result in termination of benefits. ORS 656.268(3) was amended as part of the 1995 changes. It now provides, in pertinent part:

"(3)   Temporary total disability benefits shall continue until whichever of the following events first occurs:

"* * * * *

"(d)   Any other event that causes temporary disability benefits to be lawfully suspended, withheld or terminated under ORS 656.262(4) or other provisions of this chapter."

As a result of the above amendment, temporary disability benefits are terminated not only when the worker returns to work or is released to return to work, but upon the occurrence of the events enumerated in ORS 656.262(4).[5] The incorporation of ORS 656.262(4) events into ORS 656.268(3) as

---

[5] ORS 656.268(3) provides, in its entirety:

"Temporary total disability benefits shall continue until whichever of the following events first occurs:

"(a)   The worker returns to regular or modified employment;

"(b)   The attending physician advises the worker and documents in writing that the worker is released to return to regular employment;

"(c)   The attending physician advises the worker and documents in writing that the worker is released to return to modified employment, such

events that act to terminate the obligation to pay temporary disability is a manifestation of the legislature's intention that closure orders be precluded from awarding time-loss benefits for any period of time during which there is no procedural entitlement. Thus, the legislative history when read with the text and context of the applicable statutes makes it clear that the reference in ORS 656.262(4)(g) to ORS 656.268 was intended to limit the award of retroactive time loss to 14 days, whether the claim was open or was pending closure.

The dissent contends that our decision in this case should be controlled by our holdings in *Shaw v. Rebholz*, 152 Or App 328, 954 P2d 190 (1998) and *Santos v. Caryall Transport*, 152 Or App 322, 954 P2d 187 (1998). In *Shaw*, the issue was whether the employer could be ordered to make temporary partial disability payments beyond the date that the claimant became medically stationary. The claimant contended the Board was precluded from determining that he was not entitled to benefits after that date because, in an earlier proceeding, it had concluded that the employer had improperly terminated claimant's benefits. The Board concluded that ORS 656.268 as amended by the 1995 Legislature continues to address a claimant's entitlement to benefits awarded at closure, and it ruled that claimant was not entitled to benefits beyond the date that he was disabled. On review, we summarily rejected the claimant's argument that the distinction between "substantive" and "procedural" entitlement had been legislatively overruled by the 1995 Legislature by citing to *Santos*.

In *Santos*, the issue was again whether an employer could be ordered to pay temporary partial disability payments beyond the date that the claimant was medically stationary. He argued that he was entitled to temporary disability benefits because amended ORS 656.268 no longer provides for the termination of benefits at the time that a claimant becomes medically stationary. He also argued that ORS 656.262(4)(g) could not be applied to him retroactively.

employment is offered in writing to the worker and the worker fails to begin such employment; or

"(d) Any other event that causes temporary disability benefits to be lawfully suspended, withheld or terminated under ORS 656.262(4) or other provisions of this chapter."

We did not decide the latter argument. Rather, we cited a number of cases that had been decided since the 1995 amendments, and we concluded that claimant's arguments were controlled by our holding in *Lebanon Plywood v. Seiber*, 113 Or App 651, 833 P2d 1367 (1992). In that case, we held that the claimant's substantive entitlement to temporary benefits ended on the medically stationary date, and that the Board lacked the authority to order an employer to pay benefits beyond that date.

■ Our holdings in *Santos* and *Shaw* are not controlling.[6] Whether a claimant is entitled to benefits after becoming medically stationary is not the issue. As to the award of retroactive time loss, the legislature's intent is clear that ORS 656.262(4)(g) provides a limitation on all awards of temporary disability under ORS 656.268. Under ORS 656.262(4)(g), the passage of time acts by operation of law to restrict the retroactive authorization of time loss. Consequently, claimant's physician was without authority to authorize temporary disability retroactively for a period of more than 14 days. We conclude that the Board erred when it ruled that claimant was entitled to substantive temporary disability from May 11, 1993, through April 24, 1995.[7]

Reversed and remanded for reconsideration.

**WOLLHEIM, J.,** dissenting.

The majority opinion ignores case law that existed before the adoption of ORS 656.262(4)(g) and case law after its adoption. The majority opinion acknowledges that the Board's interpretation of the relevant statutes is reasonable.

---

[6] The legislature makes law by enacting new statutes. When it acts, our task is to interpret what the legislature has done by giving effect to the legislature's intention. It is beyond our authority to create law based on a statute that is different from what the legislature intended. ORS 174.010; ORS 174.020. Although the dissent believes that essential to the determinations in the decisions in *Santos* and *Shaw* was a distinction between substantive and procedural entitlement to temporary disability benefits, neither opinion expressly considers the legislature's intent in that regard. Moreover, our prior case law is of no consequence when the legislature acts anew, as it did here. Because of the 1995 amendment to ORS 656.262, the rule of *stare decisis* is inapplicable. The dissent's analysis based on those precedents necessarily fails in light of the ambiguity of ORS 656.262(4)(g), which requires us to discern the legislature's intent from the legislative history underlying the amendment.

[7] Employer paid temporary loss benefits after April 24, 1995.

The Board's statutory interpretation is not only reasonable, it is also the correct interpretation. For this reason, I dissent.

The primary question is whether ORS 656.262(4)(g) abolished the distinction between procedural and substantive temporary disability benefits. Although it has its basis in the statutes, the "substantive/procedural" terminology is not found in ORS chapter 656. The distinction has been described in case law. *Lebanon Plywood v. Seiber*, 113 Or App 651, 833 P2d 1367 (1992). The substantive entitlement for temporary total disability benefits is set forth in ORS 656.210, which provides that "[w]hen the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages * * *." Temporary total disability benefits are awarded to replace lost wages due to a compensable temporary disability. *Cutwright v. Weyerhaeuser Co.*, 299 Or 290, 295, 702 P2d 403 (1985). Substantive time loss is the temporary total disability award, which the injured worker is entitled to receive at the time of closure by virtue of proof that the injured worker experienced a period of temporary total disability before claim closure. *SAIF v. Taylor*, 126 Or App 658, 660-61, 870 P2d 245 (1994).

An injured worker's procedural entitlement to time loss is the temporary total disability benefits that the employer or insurer is obligated to *pay* on an open claim by virtue of the procedures of claim processing before the injured worker becomes medically stationary. The ability to obtain payment of benefits for temporary total disability while the claim is open is dependent on the satisfaction of a number of conditions, most of which are set forth in ORS 656.262. In *Atchley v. GTE Metal Erectors*, 149 Or App 581, 585, 945 P2d 557, *rev den* 326 Or 133 (1997), we said:

> "[T]he general distinction between a substantive and procedural entitlement is that a substantive benefit is one that is made explicit and unconditional by statute, while a procedural benefit is conditional, arising solely from the vagaries of claim processing."

A substantive award of temporary disability at the time of closure may exceed or be less than the procedural time-loss payments to which an injured worker was entitled

during the time when the claim was open. That is, an employer or insurer may be required to pay additional time-loss payments or may be entitled to an offset for any overpaid time-loss benefits. To this date, this court has not construed the condition for payment of benefits for time loss, as set forth in ORS 656.262, as creating limitations on the award of benefits to which the injured worker is entitled under ORS 656.210 at the time of closure. This court has not held that a failure to carry out the procedures necessary to obtain payment of temporary total disability benefits while a claim is open bars an award for the entire period of disability at the time of closure.

I agree with the majority that we must first examine the text and context of ORS 656.262(4)(g). *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993); *Deluxe Cabinet Works v. Messmer,* 140 Or App 548, 553, 915 P2d 1053, *rev den* 324 Or 305 (1996). I disagree with the majority in that I believe the text and context of ORS 656.262(4)(g) support the Board's decision. Because I believe the legislative intent is clear from the text and context of ORS 656.262(4)(g), I do not consider the legislative history. A review of the relevant portions of ORS 656.262 follows.

ORS 656.262(4)(a) describes generally how benefits to time loss are paid, with the first installment due "no later than the 14th day after the subject employer has notice or knowledge of the claim, if the attending physician authorizes the payment of temporary disability compensation." The initial payment of time-loss benefits is due upon authorization by the attending physician. With the exception of ORS 656.262(4)(f), which relates to the compensability of medical services, each subsequent subparagraph of subsection (4) relates to a circumstance affecting the payment of temporary total disability benefits while the claim is open. ORS 656.262(4)(d) is the first subsection to speak about "verification" of disability, as distinct from authorization of benefits. Temporary total disability is not due and payable during the period of time where the attending physician's verification of an inability to work has been requested but not received, unless the claimant has been unable to receive treatment for reasons outside the claimant's control.[1] In *Taylor,* this court

---

[1] Explicit in ORS 656.262(4)(d) is the provision that the claimant may be entitled to temporary disability benefits that were not due and payable if the claimant

interpreted that subsection, then numbered (4)(b), and held that the requirement for verification of disability is a procedural limitation on the payment of benefits when the claim is open and does not alter the claimant's substantive entitlement to an award of benefits for the entire period of disability. We said that even if medical verification is not provided, as required under subsection (4)(d), and benefits are not due and payable while the claim is open, the benefits to which the claimant is substantively entitled become due and payable at the time of closure:

> "As we held in *Sandoval v. Crystal Pine*, 118 Or App 640, 848 P2d 1224, *rev den* 317 Or 272 (1993), the suspension of benefits pursuant to ORS 656.262(4)(b) due to the absence of medical verification of an inability to work does not terminate the claimant's substantive entitlement to benefits. The benefits to which the claimant is substantively entitled become due and payable when the claim is closed." 126 Or App at 661.

Under ORS 656.262(4)(e), the claimant's failure to attend an appointment with the attending physician may allow the employer or insurer to suspend the payment of benefits. ORS 656.262(4)(f) does not concern the payment of time-loss benefits.

Under ORS 656.262(4)(g), the disputed provision, no benefits are "due and payable pursuant to ORS 656.268" after the attending physician ceases to authorize them or for any period not authorized. Further, no authorization by a physician "under ORS 656.268" may retroactively authorize more than 14 days of benefits. From this brief summary, it can be readily determined that ORS 656.262(4) is primarily about the payment of benefits on an open claim, *i.e.*, when payment must be made, when payment is not due and payable, and when payment may be unilaterally suspended. As the statute's repeated reference to the subject bears out, the

---

can later establish that no treatment was received for reasons beyond the claimant's control. Implicit in this subsection is that the claimant can later establish that fact when the claim is closed and the claimant is awarded temporary disability benefits. Under the majority's analysis, a claimant would not be entitled to later receive time-loss benefits even if it was established that the reason the claimant was unable to receive treatment was outside the claimant's control. Thus, the majority's analysis renders subsection (4)(d) nugatory.

legislature considers authorization of benefits and verification of disability to be prerequisites to obtaining payment of temporary disability benefits on an open claim. Authorization of benefits and verification of disability, or the lack thereof, are determinative under ORS 656.262(4) for the purpose of obtaining temporary disability benefits while a claim is open and before being processed for claim closure. I presume that the legislature's use of "not due and payable" and the unilateral suspension of benefits is intentional and, further, that the legislature used different language because it intended different meanings. *Dale v. Electrical Board,* 109 Or App 613, 616, 820 P2d 868 (1991).

The process for *awarding* benefits on a claim at the time of closure, as distinct from paying benefits for time loss before closure, is set forth in ORS 656.268. *See Fazzolari v. United Beer Distributors,* 91 Or App 592, 595, 757 P2d 857, *adhered to* 93 Or App 103, 761 P2d 6, *rev den* 307 Or 236 (1988) (ORS 656.268 *only* deals with the processing of claims). For example, ORS 656.268(5)(a) provides that when the department receives the medical and vocational reports concerning an accepted disabling injury claim, the claim shall be examined and "further compensation, including permanent disability award, if any, [be] determined * * *." This implies that an injured worker may be entitled to further compensation for temporary disability beyond what was due and payable while the claim was open. ORS 656.268(13) provides:

> "Any determination or notice of closure made under this section may include necessary adjustments in compensation paid or payable prior to the determination or notice of closure, including * * * crediting temporary disability payments against current or future permanent or temporary disability awards or payments and requiring the payment of temporary disability payments which were payable but not paid."

Under ORS 656.268(15)(a), an employer or insurer may offset any compensation payable to the worker to recover an overpayment from a claim with the same employer or insurer. Each of the described subsections sets forth how an award of compensation, either an additional or lesser amount, must be made in the closure order.

ORS 656.268(3) describes the circumstances under which temporary disability benefits continue unless a specified event first occurs. ORS 656.268(3) provides:

"Temporary total disability benefits shall continue until whichever of the following events first occurs:

"(a) The worker returns to regular or modified employment;

"(b) The attending physician advises the worker and documents in writing that the worker is released to return to regular employment;

"(c) The attending physician advises the worker and documents in writing that the worker is released to return to modified employment, such employment is offered in writing to the worker and the worker fails to begin such employment; or

"(d) Any other event that causes temporary disability benefits to be lawfully suspended, withheld or terminated under ORS 656.262(4) or other provisions of this chapter."

Subsection (3)(d) refers to ORS 656.262(4) and authorizes a discontinuance of temporary disability benefits based on "[a]ny other event that causes temporary disability benefits to be lawfully suspended, withheld or terminated under ORS 656.262(4) * * *." However, subsection (3)(d) does not include the language from ORS 656.262(4)(g) of "not due and payable."

This court previously interpreted ORS 656.262(4)(g) not to require an employer to pay the claimant more than two years of retroactive temporary disability benefits while the claim was open. *Jensen v. Conagra, Inc.*, 152 Or App 449, 954 P2d 822 (1998). We rejected the claimant's arguments that ORS 656.262(4)(g) did not apply to open claims. *Id.* at 452-53.

ORS 656.262(4)(g), in turn, refers to ORS 656.268 in stating its requirement for authorization of time loss. The question here is whether the requirement for authorization of time loss applies for purposes of the award of benefits at the time of closure and, if so, whether the limitation on retroactive authorization also applies to the award of benefits.

ORS 656.262(4)(g) twice refers to ORS 656.268:

"Temporary disability compensation is not due and payable *pursuant to ORS 656.268* after the worker's attending physician ceases to authorize temporary disability or for any period of time not authorized * * *. No authorization * * * by the attending physician *under ORS 656.268* shall be effective to retroactively authorize the payment of temporary disability more than 14 days prior to its issuance." (Emphasis added.)

The Board interpreted the references in ORS 656.262(4)(g) to ORS 656.268 to relate only to ORS 656.268(3)(d), rather than to ORS 656.268 in its entirety. It held that the limitations expressed in ORS 656.262(4)(g) are additional procedural restrictions on the payment of time-loss benefits while a claim is open, but that they do not restrict an award of benefits at the time of closure. The majority disagrees.

The placement of ORS 656.262(4)(g) among the subparagraphs, which we have previously held relate only to procedural limitations on the payment of time-loss benefits, supports claimant's and the Board's interpretation. To adopt the majority's interpretation would be a significant departure from prior statutes and our case law interpreting them. *Taylor; Sandoval; Fazzolari; Vip's Restaurant v. Krause,* 89 Or App 214, 748 P2d 164, *adhered to* 91 Or App 472, 756 P2d 47, *rev den* 306 Or 414 (1988). I am unwilling to assume that the legislature intended such a departure without very clear statutory language that it did so.

The language of ORS 656.268(4)(g) does not support the majority's interpretation. The first sentence of subsection (4)(g) is expressly limited to temporary disability benefits not due and payable "pursuant to ORS 656.268." That statute is only a procedural statute. *Fazzolari,* 91 Or App at 595. Because temporary disability benefits suspended under the first sentence of subsection (4)(g) are, by definition, being paid *pursuant* to ORS 656.268, this sentence is limited to the procedural entitlement to temporary disability benefits. The second sentence of subsection (4)(g) expressly refers to an attending physician's authorization of temporary disability benefits "under ORS 656.268." The explicit reference to ORS 656.268 limits the application of this sentence of (4)(g) to the

procedural entitlement of temporary benefits while the claim is open. I cannot ignore the legislature's explicit reference to ORS 656.268 by omitting what the legislature inserted. ORS 174.010. Thus, like the first sentence, the second sentence of subsection (4)(g) is also limited to the procedural entitlement to temporary disability benefits.

The distinction between procedural and substantive benefits applies *only* to temporary disability benefits. There are no procedural permanent disability benefits, no procedural medical benefits, nor procedural vocational assistance benefits. Under the majority's reading of ORS 656.262(4)(g), the distinction between procedural and substantive temporary disability benefits no longer exists. No employer or insurer would ever be required to pay temporary benefits more than 14 days before the attending physician's authorization.

To reach this result, the majority overrules our recent decisions in both *Shaw v. Rebholtz*, 152 Or App 328, 954 P2d 190 (1998), and *Santos v. Caryall Transport*, 152 Or App 322, 954 P2d 187 (1998). Essential to the decision in *Shaw*, this court had to determine whether the legislature abolished the distinction between procedural and substantive benefits:

> "Claimant insists that the distinction between his entitlement to temporary disability benefits during the pendency of the open claim and his entitlement to the benefits at closure relies on a distinction between 'substantive' and 'procedural' entitlements that has been legislatively overruled. We have rejected that argument." 152 Or App at 333.

In *Santos*, the issue was whether the employer was required to pay time-loss benefits after the claimant was medically stationary. 152 Or App 322. The claimant argued that the amendments to ORS 656.268(3) were the only authority for the unilateral termination of time-loss benefits and that because being medically stationary was not one of the statutory grounds for the unilateral termination of time-loss benefits, the claimant was entitled to such benefits until the claim was closed. *Id.* at 325. We rejected the claimant's arguments and held that the distinction between procedural

and substantive entitlements was not changed by either the 1990 or the 1995 amendments to ORS chapter 656. *Id.* at 327.

The majority is correct that the holdings in *Santos* and *Shaw* are not directly on point. 159 Or App at 54. The majority and I disagree about the effect of this decision on *Santos* and *Shaw*. Essential to both decisions was that this court held the distinction between substantive and procedural entitlement to temporary disability benefits was not abolished by either the 1990 nor the 1995 amendments to ORS chapter 656. However, the majority here holds that the 1995 amendments to ORS 656.262(4)(g) abolished the distinction between substantive and procedural temporary disability benefits.

In summary, both sentences of ORS 656.262(4)(g) explicitly refer to ORS 656.268, the statute for processing and closing a claim. ORS 656.268 refers to procedural, not substantive, temporary disability benefits. Accordingly, I would hold that ORS 656.262(4)(g) applies only to procedural entitlement to temporary disability benefits. Here, the award of temporary disability benefits was substantive, and the Board's order was proper.

There is another reason to affirm the Board: *stare decisis*. The rule of *stare decisis* was discussed by the Supreme Court in *Multnomah County v. Sliker*, 10 Or 65, 66 (1881):

> "[T]he rule is said to be almost universal that in construing statutes and the constitution, [the courts] adhere to the doctrine of *stare decisis* [even though a different conclusion might be reached] * * * unless error is plainly shown to exist * * *."

This language was recently relied on by Judge Edmonds, dissenting in *Newell v. Weston*, 156 Or App 371, 383, 965 P2d 1039 (1998). The majority opinion ignores the rule of *stare decisis* and overrules two recent decisions by this court. I do not believe the majority has established that plain error exists. I fear this decision undermines an important policy of the appellate courts of this state: to afford certainty to the administration of justice. The changing of the goal posts by judicial fiat can only lead to uncertainty in the law and

encourage litigants to question settled law. Nor can it be said that the law concerning ORS 656.262(4)(g) is even settled. Perhaps another litigant will raise this issue again, and this court, perhaps with different members, will reexamine this statute and decide that *Santos* and *Shaw* were correctly decided. Such changes do not promote the rule of *stare decisis*, nor do they promote the administration of justice.

Because I would affirm the Board's decision, it would be necessary to reach employer's second assignment of error. Employer asserted that the Board erred in determining that claimant was disabled during the period in question. I would hold that the Board's determination is supported by substantial evidence.

I dissent.

De Muniz and Armstrong, JJ., join in this dissent.