Argued and submitted November 8, 2000, decision of Court of Appeals affirmed; order of Workers' Compensation Board reversed; case remanded to Workers' Compensation Board August 16, 2001

In the Matter of the Compensation of
Garrett W. Crawford, Claimant.

MENASHA CORPORATION and
LUMBERMANS MUTUAL CASUALTY COMPANY,
*Respondents on Review,*

*v.*

Garrett W. CRAWFORD,
*Petitioner on Review.*

(WCB 98-03327; CA A105040; SC S47076)

29 P3d 1129

Mike Stebbins, of Stebbins & Coffey, North Bend, argued the cause and filed the brief for petitioner on review.

Jerald P. Keene, of Reinisch, Mackenzie, Healey, Wilson & Clark, P.C., Portland, argued the cause and filed the brief for respondents on review.

David L. Runner, Lead Appellate Counsel, Salem, filed the brief for *amici curiae* SAIF Corporation, Pape Group, Inc., and Timber Products Company.

G. Duff Bloom, of Cole, Cary, Wing & Bloom, P.C., Eugene, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

GILLETTE, J.

** Van Hoomissen, J., retired December 30, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; De Muniz, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

The issue in this workers' compensation case is whether claimant is entitled to receive nearly two years' worth of temporary total disability (TTD) benefits, based on a physician's after-the-fact certification that claimant had been disabled for that period. An administrative law judge (ALJ) and the Workers' Compensation Board (Board) held that claimant was entitled to temporary compensation for the period in question. The Court of Appeals reversed. *Menasha Corp. v. Crawford*, 164 Or App 174, 988 P2d 451 (1999). We allowed claimant's petition for review and now affirm the decision of the Court of Appeals.

The facts are undisputed. On October 11, 1995, claimant reported to his employer that he had suffered an injury to his lower back. The next day, claimant saw Dr. Davis, who confirmed the back injury and released claimant to light work. Eight days later, Davis released claimant to regular work. In the meantime, employer fired claimant. On October 27, 1995, employer's insurer denied claimant's claim for compensation.

Claimant appealed the denial of his claim. On January 16, 1997, an ALJ reversed the denial. On July 15, 1997, the Board affirmed the ALJ's decision. Neither employer nor employer's insurer (collectively "employer") sought further review, and the merits of that adjudication are not before us. As the case comes to us, claimant is a worker who has had a valid claim for an on-the-job injury to his back, which claim was in accepted status after July 15, 1997.

Claimant was referred to and began treating with another physician, Dr. Bert, on December 13, 1995. On September 30, 1997, Bert performed surgery on claimant's back. On December 1, 1997, after an inquiry by claimant's lawyer, Bert certified retroactively that claimant had been unable to work for the period from October 20, 1995 (the date that Davis released claimant for regular work), until September 30, 1997 (the date of surgery).

On January 27, 1998, Bert released claimant for light work. On February 4, 1998, two physicians retained by employer concluded that claimant's back condition was "medically stationary."[1] Bert concurred.

On March 9, 1998, employer's insurer closed the claim and awarded TTD benefits from September 30, 1997 (the date of surgery), until February 4, 1998 (the date on which claimant was determined to be medically stationary). A later modification added the period from October 12, 1995 (the date of injury), until October 20, 1995 (the date that Davis released claimant for regular work). Claimant was not awarded benefits for the nearly two-year gap between October 20, 1995, and September 30, 1997.

Claimant challenged the award, seeking compensation for the period from October 20, 1995, until September 30, 1997. An ALJ concluded that, although ORS 656.262(4)(g)[2] restricts retroactive awards of TTD during the period of time in which the claim is open, a TTD award for the period from October 20, 1995, until September 30, 1997, nonetheless was appropriate. The ALJ explained:

> "The payment of temporary disability 'pursuant to ORS 656.268,'" as provided in [former] ORS 656.262(4)(f) [1995], concerns the payment of temporary disability during the carrier's processing of open claims to closure. Thus, ORS 262.268 refers to procedural temporary disability benefits which may accrue prior to claim closure. ORS 656.268 does not set forth the requirements for substantive entitlement to temporary disability; those requirements are set forth in

---

[1] "Medically stationary," as defined in ORS 656.005(17), means that "no further material improvement would reasonably be expected from medical treatment, or the passage of time."

[2] The statute that was in effect at the commencement of this case, ORS 656.262(4)(f) (1995), was renumbered in 1997 as ORS 656.262(4)(g), but was not otherwise changed. ORS 656.262(4)(g) provides:

> "Temporary disability compensation is not due and payable pursuant to ORS 656.268 after the worker's attending physician ceases to authorize temporary disability or for any period of time not authorized by the attending physician. No authorization of temporary disability compensation by the attending physician under ORS 656.268 shall be effective to retroactively authorize the payment of temporary disability more than 14 days prior to its issuance."

Unless otherwise noted, all statutory citations refer to the current version of the Oregon Revised Statutes.

ORS 656.210 and 656.212. *Kenneth P. Bundy*, 48 Van Natta 2501, 2503 (1996).

> "Here, inasmuch as claimant's claim has been closed, the issue is claimant's *substantive* right to temporary disability benefits. A claimant's substantive entitlement to temporary disability benefits, which is set forth in ORS 656.210 and 656.212, is determined on claim closure and is proven by a preponderance of the evidence in the entire record showing that the claimant was disabled due to the compensable injury before being declared medically stationary. * * * Neither ORS 656.210 nor ORS 656.212 contains any language which limits a worker's substantive entitlement to temporary disability to only those periods for which there is contemporaneous authorization by the attending physician. *Bundy, supra.* Therefore, claimant need not show contemporaneous authorization of time loss to be entitled to those substantive benefits."[3]

(Citations omitted; emphasis in original.)

As noted, the ALJ relied on the Board's earlier decision in *Bundy*. In that decision, the Board had held that ORS 656.262(4)(g) applies only to "procedural" obligations. That was true, the Board stated, for two reasons: First, the verbs in ORS 656.262(4)(g) are in the present tense, implying that the statute applies only when the claim is open. Second, when the legislature added what is now ORS 656.262(4)(g), it did not revise ORS 656.210 and ORS 656.212, the statutes that authorize TTD and temporary partial disability compensation (TPD), respectively. Neither of those statutes specifically limits TPD and TTD only to those periods for which a physician has issued a contemporaneous authorization. As a result, the Board held in *Bundy* that ORS 656.262(4)(g) does not apply to a claim at closure. 48 Van Natta 2501, 2503 (1996).

On review in the present case, the Board affirmed, again asserting (as it had in *Bundy*) that a claimant's "substantive" entitlement to temporary disability benefits is

---

[3] "Time loss," as used herein by the ALJ, the Board, and the Court of Appeals, is shorthand for temporary disability compensation under ORS 656.210 and ORS 656.212.

determined when the claim is closed. Citing its earlier decision in *Bundy*, the Board concluded that a worker substantively is entitled to temporary disability benefits for those periods during which the worker is able to prove that he or she was unable to work as a result of a compensable injury and that substantive entitlement to such benefits is not contingent on contemporaneous authorization of time loss by the attending physician. *Garret W. Crawford*, 51 Van Natta 1 (1999). One member of the Board concurred specially, opining that the substantive/procedural distinction on which *Bundy* depended was eliminated when the legislature enacted *former* ORS 656.262(4)(f) (1995) and *former* ORS 656.268(3)(d) (1995),[4] and that the statute required a physician to authorize any award of temporary disability. The member declined to dissent, however, because the Board's decision in *Bundy* still was the law. *Id.* at 2.

Shortly after the Board issued its *Crawford* decision, the Court of Appeals, in an en banc decision, reversed *Bundy*. *Fred Meyer, Inc. v. Bundy*, 159 Or App 44, 978 P2d 385 (1999).[5] In *Bundy*, the Court of Appeals described the issue as "whether ORS 656.262(4)(g) applies to only procedural obligations to pay temporary disability while a claim is open, or whether it also applies to the substantive entitlement to benefits at claim closure." 159 Or App at 49.

We examine the Court of Appeals' decision in *Bundy* at length, because it squarely presents the legal issue that we address in the present case. A majority of the full Court of Appeals concluded that ORS 656.262(4)(g) does not permit a physician to make an award of temporary compensation retroactive for more than 14 days. The majority rejected the Board's conclusion that ORS 656.262(4)(g) applies only to pending "procedural" claims: "On its face, ORS 656.262(4)(g) is not limited to benefits that are due and payable during the time that the claim is open." *Bundy*, 159 Or App at 50. In the majority's view, the fact that "the verbs in the statute are in

---

[4] In 1999, *former* ORS 656.268(3)(d) (1995), was renumbered as ORS 656.268(4)(d), but was otherwise unchanged.

[5] This court accepted review in *Bundy*, 329 Or 318, 994 P2d 122 (1999), but later dismissed review as improvidently allowed, 329 Or 503, 991 P2d 1058 (1999). The order of dismissal did not disclose the reasons for the court's decision to dismiss.

the present tense does not negate the possibility that the statute also applies to awards of time loss[, *i.e.*, temporary disability] made at claim closure." *Id.* (footnote omitted). In addition, "the reference to ORS 656.268 in both sentences [of ORS 656.262(4)(g)] is a reference to a statute that addresses the process of claim closure." *Id.* The Court of Appeals majority ultimately concluded that ORS 656.262(4)(g) is ambiguous and proceeded to examine the legislative history of the statute. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (establishing that paradigm of statutory interpretation). From that review, the majority concluded that ORS 656.262(4)(g) prevents a physician from authorizing retroactive benefits more than 14 days into the past. 159 Or App at 50-54.

Judge Wollheim, joined by Judges De Muniz and Armstrong, dissented. The dissent noted that the substantive/procedural distinction on which the Board relied was not found in the workers' compensation statute but, rather, existed in the Court of Appeals' case law. Specifically, the dissent argued that

"[s]ubstantive time loss is the temporary total disability award, which the injured worker is entitled to receive at the time of closure by virtue of proof that the injured worker experienced a period of temporary total disability before claim closure."

159 Or App at 55 (Wollheim, J., dissenting). Conversely,

"[a]n injured worker's procedural entitlement to time loss is the temporary total disability benefits that the employer or insurer is obligated to pay on an open claim by virtue of the procedures of claim processing before the injured worker becomes medically stationary."

*Id.*

The dissent in *Bundy* maintained that ORS 656.262(4)(g) concerns only open claims and procedural benefits, *i.e.*, "when payment must be made, when payment is not due and payable, and when payment may be unilaterally suspended." *Bundy*, 159 Or App at 57 (Wollheim, J., dissenting). The dissent then asserted that ORS 656.268, which is cross-referenced in ORS 656.262(4)(g), is a procedural statute

that describes the process for awarding temporary benefits on a claim at the time of *closure*. *Id.* at 57-58. According to the dissent:

> "The first sentence of [ORS 656.262](4)(g) is expressly limited to temporary disability benefits not due and payable 'pursuant to ORS 656.268.' That statute is only a procedural statute. Because temporary disability benefits suspended under the first sentence of subsection (4)(g) are, by definition, being paid *pursuant to* ORS 656.268, this sentence is limited to the procedural entitlement to temporary disability benefits. The second sentence of subsection (4)(g) expressly refers to an attending physician's authorization of temporary disability benefits 'under ORS 656.268.' The explicit reference to ORS 656.268 limits the application of this sentence of (4)(g) to the procedural entitlement of temporary benefits while the claim is open. * * * Thus, like the first sentence, the second sentence of subsection (4)(g) is also limited to the procedural entitlement to temporary disability benefits."

*Id.* at 60-61 (citation omitted; emphasis in original). The dissent concluded, without reaching the legislative history, that ORS 656.262(4)(g) does not establish any temporal limit on the temporary compensation that might be paid when a claim is closed. *Id.* at 56-63.

On employer's petition for judicial review in the present case, the Court of Appeals reversed the Board's decision and remanded for reconsideration in light of *Bundy*. *Menasha Corp. v. Crawford*, 164 Or App 174, 988 P2d 451 (1999). We allowed claimant's petition for review.

■ The issue before us turns on the meaning of ORS 656.262(4)(g) and is a question of the legislature's intent. As did the Court of Appeals, we examine the text and context of the statute to determine that intent. *PGE*, 317 Or at 610. If the legislature's intent is clear from the text and context, further inquiry is unnecessary. *Id.* at 611. For convenience, we again set out ORS 656.262(4)(g):

> "Temporary disability compensation is not due and payable pursuant to ORS 656.268 after the worker's attending physician ceases to authorize temporary disability or for

any period of time not authorized by the attending physician. No authorization of temporary disability compensation by the attending physician under ORS 656.268 shall be effective to retroactively authorize the payment of temporary disability more than 14 days prior to its issuance."

The authorization of the attending physician triggers the duty to pay temporary disability benefits. Subsection (4)(a) of ORS 656.262, provides:

"The first installment of temporary disability compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim, *if the attending physician authorizes the payment of temporary disability compensation.*"

(Emphasis added.) Subsection (4)(d) of the same statute provides:

"Temporary disability compensation is not due and payable for any period of time for which the insurer or self-insured employer has requested from the worker's attending physician verification of the worker's inability to work resulting from the claimed injury or disease and the physician cannot verify the worker's inability to work, unless the worker has been unable to receive treatment for reasons beyond the worker's control."

Viewed in light of subsections (4)(a) and (4)(d), the first sentence of subsection (4)(g) is clear. It describes two additional sets of circumstances in which temporary disability compensation is *not* due and payable: (1) after the claimant's attending physician ceases to authorize such compensation; and (2) for any other period of time "not authorized by the attending physician."

The first sentence leaves open this question: Should a worker receive TTD when an attending physician belatedly concludes that the worker is temporarily totally disabled? The second sentence of subsection (4)(g) answers that question: The attending physician's authorization of temporary total disability payments can be retroactive for up to 14 days—but no more.

The foregoing statutes state the positive law basis for awarding TTD. TTD benefits are not due and payable if the claim does not meet the qualifying statutory criteria.

ORS 656.268, the statute twice cross-referenced in ORS 656.262(4)(g), sets out the procedures for terminating TTD benefits. That statute provides, in part:

"(4)  Temporary total disability benefits shall continue until whichever of the following events first occurs:

"(a)  The worker returns to regular or modified employment;

"(b)  The attending physician advises the worker and documents in writing that the worker is released to return to regular employment;

"(c)  The attending physician advises the worker and documents in writing that the worker is released to return to modified employment, such employment is offered in writing to the worker and the worker fails to begin such employment; or

"(d)  Any other event that causes temporary disability benefits to be lawfully suspended, withheld or terminated under ORS 656.262(4) or other provisions of this chapter."

As did the dissent in *Bundy*, claimant here argues that the text of ORS 656.262(4)(g) applies only to open claims, not to circumstances in which a claim is being closed and an award is being finalized. As our examination of that statute in context demonstrates, however, the text and context of ORS 656.262(4)(g) do not permit such an interpretation: Neither ORS 656.262(4)(g) nor any other statute that provides context for ORS 656.262(4)(g) makes a distinction between a pending claim and a claim at the time of closing respecting retroactive compensation.[6]

---

[6] The *Bundy* dissent purported to find such a distinction, based on the difference in wording between ORS 656.262(4)(g) ("not due and payable") and ORS 656.268(4)(d) ("suspended, withheld, or terminated"). The two statutes are harmonizable, however, when one recognizes that benefits are "terminated" when they no longer are due and payable.

The workers' compensation statutes provide for TTD in ORS 656.210[7] and for TPD in ORS 656.212.[8] To be payable, such compensation must have both a physician's initial and continuing authorization. "The first installment of temporary disability compensation shall be paid * * * if the attending physician[9] authorizes the payment of temporary disability compensation." ORS 656.262(4)(a). An attending physician may authorize payment of disability benefits and payment may continue only for the period of time authorized by those sections. ORS 656.262(4)(h). An employer may suspend payment of TTD or TPD at the end of the period until the attending physician reauthorizes the temporary disability. ORS 656.262(4)(h). Such compensation is not due and payable for any period for which the attending physician cannot verify the worker's inability to work, if the insurer or self-insured employer has requested verification of that inability. ORS 656.262(4)(d). Further, if the insurer or self-insured

---

[7] ORS 656.210(1) states:

"When the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages, but not more than 100 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50 a week, whichever amount is lesser. Notwithstanding the limitation imposed by this subsection, an injured worker who is not otherwise eligible to receive an increase in benefits for the fiscal year in which compensation is paid shall have the benefits increased each fiscal year by the percentage which the applicable average weekly wage has increased since the previous fiscal year."

ORS 656.210(2)-(4) further defines the methods of calculating temporary total disability benefits.

[8] ORS 656.212 states:

"When the disability is or becomes partial only and is temporary in character:

"(1) No disability payment is recoverable for temporary disability suffered during the first three calendar days after the worker leaves work or loses wages as a result of the compensable injury. If the worker leaves work or loses wages on the day of the injury due to the injury, that day shall be considered the first day of the three-day period.

"(2) The payment of temporary total disability pursuant to ORS 656.210 shall cease and the worker shall receive for an aggregate period not exceeding two years that portion of the payments provided for temporary total disability which the loss of wages bears to the wage used to calculate temporary total disability pursuant to ORS 656.210."

[9] An attending physician generally is a licensed physician who primarily is responsible for treating a worker's compensable injury for the earlier of 30 days from the date of first visit on the initial claim or 12 visits. ORS 656.005(12)(b)(B); see also ORS 656.245(5) (authorizing certain nurse practitioners and physician assistants who practice in rural areas to authorize payment of temporary disability compensation for 30 days from date of first visit on claim).

.

employer has requested, but has not received, some form of verification from the attending physician, that physician's services are not compensable until the physician submits such verification. ORS 656.262(4)(f).

ORS 656.262(4)(g) applies in conjunction with ORS 656.268, the statute that determines a claimant's entitlement to claim closure as well as the claimant's entitlement to TTD. Consistent with the first sentence of ORS 656.262(4)(g), ORS 656.268 provides that TTD continues until the attending physician advises the claimant and documents in writing that the claimant is released to return to regular employment. ORS 656.268(4)(b). In addition, that same subsection provides that TTD shall continue until "[a]ny other event that causes temporary disability benefits to be lawfully suspended, withheld or terminated under *ORS 656.262(4) * * *.*" ORS 656.268(4)(d) (emphasis added).

In sum, the statement in ORS 656.262(4)(g) that "[n]o authorization * * * shall be effective * * * retroactively * * * more than 14 days" establishes that the legislature did not intend to permit physicians to certify retroactive temporary compensation for a period greater than 14 days. Context does not alter that fact: No related statutory provision states that ORS 656.262(4)(g) applies only to certain kinds of claims but not to others, or that the statute applies to claims while they are pending but not to claims at the time of their closure. The statutory text viewed in context is unambiguous. We need not examine legislative history to determine the legislature's intent. *PGE*, 317 Or at 611.

Application of the statute to this case is straightforward. On October 20, 1995, Davis released claimant for regular work. Under ORS 656.262(4)(g), temporary disability benefits no longer were due and payable to him, because the "attending physician cease[d] to authorize temporary disability." Later, Bert retroactively certified claimant as fully disabled from October 20, 1995, but Bert's later certification is, as we have shown, subject to the clearly worded limitation in the second sentence in ORS 656.262(4)(g). The Court of Appeals thus properly remanded the case to the Board to recalculate claimant's award of TTD benefits.

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.