Argued and submitted January 7, decision of the Court of Appeals affirmed
May 6, 1993

In the Matter of the Compensation of
Ronald R. Buddenberg, Claimant.

Ronald R. BUDDENBERG,
*Petitioner on Review,*

*v.*

SOUTHCOAST LUMBER
and SAIF Corporation,
*Respondents on Review.*

(WCB 89-19242; CA A68896; SC S39328)

850 P2d 360

Jon C. Correll, Eugene, argued the cause for petitioner on review. Edward J. Harri, of Malagon, Moore, Johnson, Jensen & Correll, Eugene, filed the petition for petitioner on review.

Steve Cotton, Special Assistant Attorney General, Salem, argued the cause and filed the response for respondents on review. With him on the response were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

### GILLETTE, J.

In this workers' compensation case, the issue is whether the Director of the Department of Insurance and Finance (the Director) exceeded his statutory authority in the adoption of certain standards for the evaluation of permanent partial disability. We conclude that the Director did not exceed his authority in the manner urged by claimant.

Before 1987, the rating of extent of disability under the workers' compensation laws was carried out on an *ad hoc* basis. The Director had promulgated "guidelines" for the rating of the extent of various kinds of disability, but the Court of Appeals had held (and this court had agreed) that the "guidelines" were just that — guidelines. They were not a substitute for evidence as to what the extent of a claimant's disability actually might be. *See Fraijo v. Fred N. Bay News Co.*, 59 Or App 260, 268-69, 650 P2d 1019 (1982) (Court of Appeals employed the guidelines "merely as a tool"); *accord Harwell v. Argonaut Insurance Co.*, 296 Or 505, 510, 678 P2d 1202 (1984) ("use of the guidelines is not a substitute for a 'fair assessment' of the percentage of disability").

The uncertainty inherent in the foregoing situation changed when, in 1987, the legislature amended ORS 656.283(7) to provide in part:

> "Except as otherwise provided in this section and rules of procedure established by the board, the referee is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure, and may conduct the hearing in any manner that will achieve substantial justice. *The referee shall apply to the hearing of the claim such standards for evaluation of disability as may be adopted by the director pursuant to ORS 656.726.*"

Or Laws 1987, ch 884, § 11 (emphasis supplied).

The Director adopted the standards authorized by the 1987 act. They are found at OAR 436-35-001 *et seq.* The standards were intended "to reflect the criteria for rating outlined in legislation adopted by the 1987 legislature." *Former* OAR 436-35-002. The standards replaced the guidelines and "applied to all claims closed after July 1, 1988." *Former* OAR 436-35-003.

Claimant suffered a compensable injury to his feet on June 6, 1981. In December 1982, and presumably under the guidelines for the evaluation of disability then in effect, that claim was closed with an award of compensation for 60 percent scheduled permanent partial disability (PPD) in each foot. In 1987, claimant filed a new claim for aggravation,[1] contending that the condition of his feet had worsened. His condition became medically stationary in August 1989. In September 1989, a determination order awarded claimant compensation for temporary total disability from November 1987 through August 1989, but denied him any additional compensation for scheduled PPD. Claimant requested a hearing, and a referee affirmed the denial of additional scheduled PPD.

On review from the referee's order, the Workers' Compensation Board also denied additional scheduled PPD benefits. The Board determined that, under the standards for evaluation of disability that were in effect on the date of the September 1989 determination order, the extent of claimant's scheduled permanent partial disability was 28 percent. Under the version of the Workers' Compensation Law then applicable to this case, a party dissatisfied with his or her rating under the standards was permitted to attempt to "establish by clear and convincing evidence that the degree of permanent disability suffered by the claimant is more or less than the entitlement indicated by the standards adopted by the director under ORS 656.726." ORS 656.283(7), 656.295(5) (1989).[2] Claimant attempted to meet that burden.

---

[1] Although a claim for aggravation is based on the prior adjudicated claim, we call a claim for aggravation "new" for two reasons. First, a claim for aggravation independently fits the definition of a "claim." See ORS 656.005(6) (" 'Claim' means a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge."). Second, the statute that authorizes claims for aggravation, ORS 656.273, clearly treats such a claim as independent of the prior adjudicated claim. For example, ORS 656.273(2) requires a separate filing of a claim for aggravation, ORS 656.273(3) allows a physician's report to serve as a claim for aggravation, and· ORS 656.273(4) provides a separate statute of limitations for a claim for aggravation (generally, five years from last arrangement of compensation).

[2] That provision was rewritten in 1990, however. Or Laws 1990, ch 2, §§ 20, 22. Presently, the law allows a party to establish "by a preponderance of the evidence that the standards adopted pursuant to ORS 656.726 for evaluation of the worker's permanent disability were incorrectly applied." ORS 656.283(7), 656.295(5). This case does not involve any issue concerning the quantum of proof that claimant was required to produce under the statute.

The Board found, however, that, while claimant had established by clear and convincing evidence that the actual extent of his scheduled permanent partial disability was greater than the 28 percent indicated by the standards, he had not demonstrated that his actual permanent disability under the 1989 standards exceeded the 60 percent scheduled PPD previously awarded under the guidelines. The Board therefore ruled that claimant was not entitled to additional scheduled PPD benefits.

On judicial review in the Court of Appeals, claimant argued that, by finding that his condition had worsened since the last arrangement of compensation but then refusing to award him additional scheduled PPD benefits, the Board had denied him his statutory right to "additional compensation" under ORS 656.273(1), set out *infra*. The Court of Appeals disagreed and affirmed the Board's decision, holding that "[a] worker is entitled to additional compensation under ORS 656.273(1) only if the worsened condition increases the extent of disability as defined by the standards." *Buddenburg v. Southcoast Lumber*, 112 Or App 148, 152, 826 P2d 1062 (1992). We allowed review and now affirm the decision of the Court of Appeals.

Claimant does not argue to this court that the Board erred in applying the standards, rather than the guidelines, to his aggravation claim. It is clear that, by their own terms, the standards applied. Neither does claimant argue that the Board miscalculated when it determined the extent of his disability under those standards. Claimant's argument is that, by adopting standards that had the effect of denying him a greater award of PPD *benefits* despite the worsening of his *condition*, the Director exceeded his statutory authority by limiting claimant's right to "additional compensation" under ORS 656.273(1). Essentially, claimant's argument is that, because of an injured worker's right to "additional compensation" under ORS 656.273(1), the standards must provide a special "tacking" procedure for evaluating the extent of disability on aggravation claims. By not promulgating standards that included such a procedure, claimant argues, the Director exceeded his statutory authority. For the reasons that follow, we reject claimant's argument.

Claimant bases his argument on ORS 656.273(1), which states, in part: "After the last award or arrangement of compensation, *an injured worker is entitled to additional compensation*, including medical services, for *worsened conditions* resulting from the original injury." (Emphasis supplied.) According to claimant, once he proves a worsening of his condition,[3] he is entitled as a matter of right under ORS 656.273(1) to additional compensation in the form of "a greater award of disability." Claimant concludes that, by adopting standards that permitted denial of such an award, the Director must have exceeded his statutory authority.

Our recitation of the procedural, statutory, and regulatory history of the standards demonstrates that the Director's promulgation of them did not violate any right of claimant to compensation under ORS 656.273(1). First, claimant's right to "additional compensation" was not compromised. He did, in fact, receive compensation on his aggravation claim. Under the Workers' Compensation Law, " '[c]ompensation' includes all benefits, including medical services, provided for a compensable injury to a subject worker or the worker's beneficiaries by an insurer or self-insured employer pursuant to this chapter." ORS 656.005(8). Thus, "compensation" encompasses benefits paid for death, ORS 656.204, permanent total disability, ORS 656.206, temporary total disability, ORS 656.210, temporary partial disability, ORS 656.212, and permanent partial disability, ORS 656.214, as well as medical services, ORS 656.245. In this case, claimant received benefits for temporary total disability from November 23, 1987, through August 21, 1989, as well as medical services for surgery and treatment of his feet. Consequently, claimant actually received "additional compensation" for his claim of a worsened condition.

■ Second, to the extent that claimant is arguing that ORS 656.273(1) entitled him to one particular *type* of additional compensation — *i.e.*, additional scheduled PPD benefits — we disagree. By itself, ORS 656.273(1) does not entitle

---

[3] In this case, neither the referee nor the Board made an express finding that claimant's condition had, in fact, worsened. Nevertheless, such a finding was implicit in the orders in this case, and no party has raised any argument on that point. For purposes of this opinion, we will assume that claimant proved a physical worsening of his condition as a matter of fact.

an injured worker to any particular type of additional compensation. The type of additional compensation (if any) to which an injured worker is entitled under the statute depends on how the claimant's circumstances fit within the provisions of the Workers' Compensation Law governing that particular claim.

■     The present case illustrates the principle. To qualify for compensation for permanent partial disability, an injured worker must show a permanent loss of use, either complete or partial, of a part of the body.[4] Next, as explained above, the extent of the worker's disability must be determined under the standards adopted by the Director. In this case, claimant established a permanent partial disability by showing a partial loss of use of his feet. As required by the statutes, the Board rated the extent of that permanent partial disability according to the standards. The extent of claimant's disability, as determined under the standards (28 percent), was less than the extent of the disability for which claimant previously had been compensated (60 percent) under a former claim that had been decided under the guidelines. Claimant was unable to prove, by clear and convincing evidence, that the extent of his disability exceeded the 60 percent disability for which he already had been compensated. Accordingly, claimant was not entitled to any further PPD benefits, despite the fact that his condition had worsened.

The way in which claimant could receive additional PPD under the present facts would be if the Director had promulgated a rule that created a "bridge" between the old (guidelines) and the new (standards) disability ratings. Such a rule would have to direct that, for workers whose original injuries were rated under the old system, the facts no longer mattered. But we do not discern from ORS 656.273(1), nor from any other source, a legislative requirement that the Director adopt as part of the standards the procedure that claimant proposes. As explained above, ORS 656.273(1) allows "additional compensation" to an injured worker who

---

[4] ORS 656.214 governs permanent partial disability. Under that statute, " '[p]ermanent partial disability' means the loss of either one arm, one hand, one leg, one foot, loss of hearing in one or both ears, loss of one eye, one or more fingers, or any other injury known in surgery to be permanent partial disability." ORS 656.214(1)(b). " 'Loss' includes permanent and complete or partial loss of use." ORS 656.214(1)(a).

proves a worsened condition resulting from the original injury. However, the statute does not guarantee any particular type of compensation, such as scheduled PPD benefits, nor does the statute even purport to prescribe how the extent of disability should be determined on an aggravation claim. Because ORS 656.273(1) does not compel the evaluation procedure advocated by claimant, the Director did not compromise any right guaranteed to claimant by that statute in adopting standards that did not include that procedure.

In addition to noting that there is no textual justification in the statute or rules for his position, we note also that claimant's argument is inconsistent with his own acknowledgment of the applicability of the 1987 standards to his case. Under the old guidelines, a particular level of physical impairment (or "loss of use") was rated as a greater extent of disability than the same level of impairment now is rated under the standards. The effect of claimant's argument would be that a worker who was hurt initially during the reign of the guidelines system would be entitled, after proof of a compensable aggravation claim, to an even higher rating of permanent partial disability, while a worker who is making a claim under the standards for a new injury would be entitled to a much lower rating of PPD, *in spite of the fact that both workers are physically impaired to precisely the same extent.* The accurate way to portray claimant's situation is to say that, because he received his original injury when the earlier system was in place, he received a higher disability rating at that time than he would receive now, even with the further aggravation of his injury. That earlier disability rating is unassailable, but the legislature was not required to further the disparate treatment of our two hypothetical workers by granting the earlier-injured worker even more benefits now.

We hold that the Director did not exceed his statutory authority in the manner claimant urges. It follows that the Board committed no error in applying the standards to the new aggravation claim, and the Court of Appeals was correct in affirming the Board's decision.

The decision of the Court of Appeals is affirmed.