Argued and submitted October 28, affirmed December 29, 2004, petition for review allowed April 26, 2005 (338 Or 488)

In the Matter of the Compensation of
Robert M. Morales, Claimant.

Robert M. MORALES,
*Petitioner,*

*v.*

SAIF CORPORATION
and Bring Recycling,
*Respondents.*

02-07850; A122935

103 P3d 654

Christine Jensen argued the cause for petitioner. On the briefs was Christopher D. Moore.

Jerome Larkin argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Claimant seeks review of an order of the Workers' Compensation Board holding that, pursuant to ORS 656.325(5)(b), Bring Recycling (employer) was entitled to cease paying benefits for temporary *total* disability and begin paying benefits for temporary *partial* disability. We affirm.

The facts are undisputed. In 1997, claimant suffered a shoulder injury at work, which employer accepted as nondisabling. Claimant returned to his job without time loss. In 1998, employer terminated claimant's employment for a violation of work rules. Claimant began working for a different employer, Foss Furniture Clinic (Foss). Meanwhile, in 2000, employer implemented a written policy to assist workers to return to work after an injury by offering modified work.

In 2002, claimant's shoulder condition became worse and he was unable to continue working at Foss. He has not returned to work since that time. In July 2002, employer accepted an aggravation claim relating to the shoulder injury and reclassified the original claim as disabling. Employer began paying benefits for temporary total disability as of September 19, 2002. Claimant had surgery on his shoulder on September 23, 2002, and his attending physician released him for modified work on September 30, 2002. On October 9, 2002, the attending physician approved a modified job that employer would have offered to claimant as of October 14, 2002, had he remained employed. In response to the physician's release, employer ceased payment of temporary total disability as of October 14. The board upheld employer's termination of benefits, and claimant seeks judicial review. The only question on review is whether employer was authorized to cease paying temporary total disability benefits. We begin our analysis with a review of the general provisions relating to temporary disability.

A nondisabling injury is an injury that requires medical services only. ORS 656.005(7)(d). A disabling injury is one that entitles a worker to compensation for disability. ORS 656.005(7)(c). An injury that is initially nondisabling may be reclassified as disabling through the filing of an aggravation claim, ORS 656.277(2), as occurred in this case.

When a claim is reclassified as disabling, benefits for temporary disability become available. ORS 656.210 is the general provision relating to benefits for temporary total disability. It provides that,

> "[w]hen the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages * * *."

There are times when, as here, a worker's nondisabling injury becomes temporarily disabling after the worker has left the employer-at-injury. If the worker remains in the workforce, the worker is nonetheless entitled to benefits for temporary disability. *See* ORS 656.262(4)(a) (setting forth requirement for payment of temporary disability compensation); ORS 656.005(30) ("worker" does not include a person who has withdrawn from the workforce during the period for which benefits are sought); OAR 436-030-0020; *RSG Forest Products v. Jensen*, 127 Or App 247, 250, 873 P2d 324 (1994). Temporary total disability benefits are available for aggravation claims. ORS 656.273(6) (a claim for aggravation is to be processed in accordance with the provisions of ORS 656.262). It is undisputed that, although claimant had been discharged from his employment with employer, when his condition became disabling while he was working for Foss he was entitled to and received benefits for temporary total disability.

Under ORS 656.268(4), benefits for temporary total disability generally continue until:

> "(a)  The worker returns to regular or modified employment;
>
> "(b)  The attending physician advises the worker and documents in writing that the worker is released to return to regular employment;
>
> "(c)  The attending physician advises the worker and documents in writing that the worker is released to return to modified employment, such employment is offered in writing to the worker and the worker fails to begin such employment. * * *

"(d)   Any other event that causes temporary disability benefits to be lawfully suspended, withheld or terminated under ORS 656.262(4) or other provisions of this chapter."

ORS 656.268 applies to aggravation claims. *See Trujillo v. Pacific Safety Supply*, 336 Or 349, 372, 84 P3d 119 (2004); *Fred Meyer, Inc. v. Bundy*, 159 Or App 44, 978 P2d 385, *rev dismissed*, 329 Or 503 (1999).

▬  When a worker is no longer totally disabled, ORS 656.212 provides authorization for a reduction in temporary disability benefits:

"When the disability is or becomes partial only and is temporary in character:

"* * * * *

"(2)   The payment of temporary total disability pursuant to ORS 656.210 shall cease and the worker shall receive that proportion of the payments provided for temporary total disability which the loss of wages bears to the wage used to calculate temporary total disability pursuant to ORS 656.210."

Thus, as a general rule, when a worker's temporary disability becomes partial in character and the worker returns to wage earning employment, the worker's entitlement to temporary total disability under ORS 656.210 ceases, and benefits for partial disability, if any, are calculated as a percentage of the temporary total disability benefits, pursuant to ORS 656.212(2).

Sometimes a worker whose disability becomes partial is no longer employed with the employer-at-injury and is therefore unable to return to a modified job with that employer. In those cases, the worker's benefits are determined based on the modified work to which the worker returns at the worker's current employer.[1] There are, however, several circumstances in which the employer is

---

[1] A Department of Consumer and Business Services administrative rule, OAR 436-060-0030, implements ORS 656.212 and provides, in part:

"(3)   An insurer shall cease paying temporary total disability compensation and start paying temporary partial disability compensation under section (1) from the date an injured worker begins wage earning employment, prior to claim closure, unless the worker refuses modified work pursuant to ORS 656.268(4)(c)(A) through (F). If the worker is with a new employer and upon

required to cease paying benefits for temporary total disability even if the worker has not returned to modified work, either for the employer-at-injury or for a different employer. For example, under ORS 656.268(4)(c), benefits for temporary total disability must be terminated when the worker has been offered modified employment and, in the absence of an exception listed in ORS 656.268(4)(c)(A) - (F), fails to begin such employment. ORS 656.325(5) describes three other circumstances that require an employer to cease payment of benefits for temporary total disability and begin payment of benefits for temporary partial disability when the worker has not returned to modified work.

First, when the worker refuses wage-earning employment before claim determination, and the worker's attending physician agrees that the worker is capable of performing the offered employment, ORS 656.325(5)(a) requires the employer to cease paying temporary total disability benefits and begin paying temporary partial disability benefits.

Second, when the worker is in the United States in violation of federal immigration laws and the attending physician approves of employment at a modified job, even if no job is made available, ORS 656.325(5)(c) requires the employer to cease paying benefits for temporary total disability and begin paying benefits for temporary partial disability.

Third, ORS 656.325(5)(b), the subsection at issue in this case, applies when a worker has been terminated from employment for violation of work rules or other disciplinary reasons:

> "If the worker has been terminated for violation of work rules or other disciplinary reasons, the insurer or self-insured employer shall cease payments pursuant to ORS 656.210 and commence payments pursuant to ORS 656.212 when the attending physician approves employment in a modified job that would have been offered to the worker if the worker had remained employed, provided that the

request of the insurer to provide wage information, it shall be the worker's responsibility to provide documented evidence of the amount of any wages being earned. Failure to do so shall be cause for the insurer to assume that post-injury wages are the same as or higher than the worker's wages at time of injury."

employer has a written policy of offering modified work to injured workers."

OAR 436-060-0030 implements ORS 656.325(5)(b) and provides, in part:

"(6)  Pursuant to ORS 656.325(5)(b), the insurer shall cease paying temporary total disability compensation and start paying temporary partial disability compensation under section (1) as if the worker had begun the employment when the attending physician or authorized nurse practitioner approves employment in a modified job that would have been offered to the worker if the worker had not been terminated from employment for violation of work rules or other disciplinary reasons, under the following conditions:

"(a)  The employer has a written policy of offering modified work to injured workers;

"(b)  The insurer has written documentation of the hours available to work and the wages that would have been paid if the worker had returned to work in order to determine the amount of temporary partial disability compensation under section (1);

"(c)  The attending physician or authorized nurse practitioner has been notified by the employer or insurer of the physical tasks to be performed by the injured worker; and

"(d)  The attending physician or authorized nurse practitioner agrees the employment appears to be within the worker's capabilities."

Thus, if ORS 656.325(5)(b) applies, the employer-at-injury need not make an actual offer of employment and the worker need not return to work or refuse to return to work. Payment of benefits for temporary total disability must cease when the attending physician or authorized nurse practitioner approves of employment in a modified job that *would have been offered* if the worker had not been terminated, so long as the employer has a written policy of offering modified work to injured workers.

■      Because claimant had been terminated from his employment with employer, he could not return to work for employer when he became partially disabled, and employer

did not actually offer him a job. Rather, it created a hypothetical modified job of which his attending physician approved. The board held that, because employer had a written policy of offering modified work to injured workers at the time of the approval of the modified job, the provisions of ORS 656.325(5)(b) were applicable and that employer was required to cease payment of temporary total disability benefits on October 14, 2002, when employer's hypothetical job offer would have taken effect. On review, claimant raises a number of questions concerning the meaning and applicability of ORS 656.325(5).

Citing *Buddenberg v. Southcoast Lumber*, 316 Or 180, 850 P2d 360 (1993), claimant initially contends, that aggravation claims are not subject to ORS 656.325 because, as separate and independent, those claims are governed by ORS 656.273, which does not refer to or incorporate ORS 656.325. In *Buddenberg*, the worker sought an increase in his permanent partial disability (PPD) benefits based on an aggravation of compensable injuries to his feet. The worker contended that, having established a worsening of his condition, he was entitled as a matter of right under ORS 656.273(1) to additional compensation in the form of "a greater award of disability." The court said that by itself, ORS 656.273(1) does not entitle an injured worker to any particular type of additional compensation. Although, as the court said, "a claim for aggravation independently fits the definition of a 'claim,' " 316 Or at 183 n 1, a claimant's entitlement to benefits for an aggravation depends "on how the claimant's circumstances fit within the provisions of the Workers' Compensation Law governing that particular claim." *Id*. at 186.

As we understand *Buddenberg*, the court reasoned that, although an aggravation claim is a separate claim, the general provisions of the Workers' Compensation Law regarding the availability of and limitations on particular types of benefits apply to aggravation claims. Thus, claimant's entitlement to benefits for temporary total disability depends simply on whether the circumstances of his claim entitled him to benefits under the general provisions of the Workers' Compensation Law. As we have said, temporary disability benefits are payable on aggravation claims, and the

various provisions regarding payment of temporary disability benefits apply. ORS 656.273(6) (a claim for aggravation is to be processed in accordance with the provisions of ORS 656.262); *Buddenberg*, 316 Or at 185. Again, ORS 656.325(5) describes three circumstances that require a termination of temporary total disability benefits. The statute is not limited to initial claims, and we see no reason to infer such a limitation. We conclude that benefits for temporary total disability paid on an aggravation claim are subject to termination for the reasons set forth in ORS 656.325(5).

Claimant next contends that, if ORS 656.325(5) applies to an aggravation claim, as the court said in *Buddenberg*, the claim is new and independent, separate from the initial claim, and should be analyzed on its own merits based on the current circumstances, not on events that preceded it. So, claimant asserts, his termination from employment in 1998 after his initial claim and before the aggravation claim should have no bearing on his entitlement to benefits for temporary partial disability on the current aggravation claim. In claimant's view, he should not be "punished" for an event that took place at a prior employment. He contends that, in light of the legislative policy of the Workers' Compensation Act to return workers to physical and economic self-sufficiency, ORS 656.325 should be read narrowly and applied only when a worker loses time from work because of a termination from employment due to a violation of work rules, not when the worker suffers time loss because of a compensable injury.

Claimant's policy arguments notwithstanding, his interpretation of the statute is not borne out by its text. It is true, as claimant asserts, that ORS 656.325(5)(b) does not expressly state by whom the worker must have been terminated. ORS 656.325(5)(b) applies simply "[i]f a worker has been terminated for violation of work rules or other disciplinary reasons." However, the answer is implicit in the text. It provides that *if* a worker has been terminated, and "the attending physician approves employment in a modified job *that would have been offered to the worker if the worker had remained employed,*" the insurer or self-insured employer must cease payments pursuant to ORS 656.210 and commence payments pursuant to ORS 656.212. The insurer or

self-insured employer required to cease paying benefits is the insurer or self-insured employer-at-injury. The hypothetical modified job is a job that would have been offered by the employer-at-injury had the worker remained employed with the employer-at-injury. Thus, the provision applies when the worker has been terminated from the employment-at-injury and would have returned to work for that employer but for the termination. Furthermore, there is no suggestion in the text or context that the fact of the termination from the employment-at-injury becomes irrelevant when the worker finds a new job or files an aggravation claim.

Claimant argues that the structure of ORS 656.325(5)(b) suggests that the statute applies only if the worker is receiving temporary total disability benefits *at the time of the termination*. In claimant's view, the fact that the requirement to cease making payment of benefits follows the introductory phrase "if the worker has been terminated," suggests that the worker must have been receiving benefits for temporary total disability at the time of the termination from employment for those benefits to cease. That reading, however, founders when the sentence is read in its entirety: "The insurer or self-insured employer shall cease payments pursuant to ORS 656.210 and commence payments pursuant to ORS 656.212 when the attending physician approves employment in a modified job that would have been offered to the worker if the worker had remained employed." The statute conditions both the obligation to cease payment of temporary total disability and the obligation to commence payment of temporary partial disability on the attending physician's approval of employment in a modified job, not on the termination from employment. It is not until the worker's physician approves a modified job that the employer may cease payment of temporary total disability, whether or not benefits for temporary total disability were being paid before the termination from employment. The introductory phrase "if the worker has been terminated" describes the types of cases to which the statute applies, but it does not otherwise bear on the chronology for the termination of benefits.

The remaining question is whether employer satisfied the requirement of ORS 656.325(5)(b) that it have a written policy of offering modified work to injured workers.

Employer's policy came into effect in 2000, after claimant had been terminated. In claimant's view, employer was required to have its policy in place at the time of the injury or no later than when he was terminated. Employer takes the view that the statute requires only that the policy be in effect at the time of the physician's approval of the modified job.

We agree with employer. As we have said, employer's obligation to cease paying benefits for temporary total disability and to commence payment of temporary partial disability was conditioned on the attending physician's approval of a modified job. We conclude based on the text of the statute that the obligation to have a return to work policy in place is also associated with that date, rather than the date of termination, and that the statute is fulfilled if the employer "has a policy" when the worker's attending physician approves a modified job. Although employer was not required actually to offer claimant modified work, the requirement that employer have a policy of offering modified work lends authenticity to the hypothetical modified job that would have been offered to claimant had he remained employed. Here, employer's policy was in effect when claimant experienced a disabling aggravation of his compensable condition and when his attending physician approved employment in a modified job that employer would have offered to him as of October 14, 2002, had he remained employed there. The provisions of the statute have been satisfied.

Affirmed.