Argued and submitted January 9, order of Court of Appeals reversed, and case remanded to Court of Appeals for further proceedings May 24, 2007

### JOHN A. MASTRIANO,
*Respondent on Review,*

*v.*

### BOARD OF PAROLE
### AND POST-PRISON SUPERVISION,
*Petitioner on Review.*

### (CA A124636; SC S53543)

159 P3d 1151

Erin C. Lagesen, Assistant Attorney General, argued the cause for petitioner on review. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, Salem.

Bronson D. James, Deputy Public Defender, argued the cause for respondent on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services, Salem.

LINDER, J.

## LINDER, J.

■ In 2003, the Board of Parole and Post-Prison Supervision (the board) denied petitioner's request to reopen and reconsider a 1997 order revoking his parole and a 1998 order resetting his parole release date. Petitioner sought judicial review. The Court of Appeals granted the board's motion to dismiss on the ground that the order did not "adversely affect or aggrieve" petitioner, as required by ORS 144.335(1).[1] This court vacated the order of dismissal and remanded for reconsideration in light of *Richards v. Board of Parole*, 339 Or 176, 118 P3d 261 (2005) (discussing "adversely affected or aggrieved" requirement of ORS 144.335(1)). On remand, the Court of Appeals concluded that, under *Richards*, the order denying reconsideration adversely affects or aggrieves petitioner. The court further concluded that, contrary to the board's position, the order is a "final order" within the meaning of ORS 144.335(1). The Court of Appeals therefore denied the board's motion to dismiss, and this court allowed the board's petition for review. We hold that a board order denying reopening and reconsideration of an earlier final order is not itself a final order for purposes of judicial review pursuant to ORS 144.335(1). We therefore reverse and remand.

Petitioner is serving a 20-year sentence of imprisonment for a 1985 burglary conviction. After an initial period of incarceration, petitioner was released on parole. In 1997, however, the board revoked his parole and, in January 1998, the board held a future disposition hearing at which it denied petitioner re-release on parole and reset his release date for November 1, 2010. The board memorialized its decision denying re-release in Board Action Form (BAF) 33. Petitioner requested that the board administratively review BAF 33; the board, by written order, denied that request. Petitioner

---

[1] ORS 144.335(1), in its current form, provides:

"A person over whom [the board] exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if:

"(a) The person is adversely affected or aggrieved by a final order of the board; and

"(b) The person has exhausted administrative review as provided by board rule."

unsuccessfully sought judicial review of the board's order in the Court of Appeals.[2]

Several years passed. Then, in August 2003, petitioner asked the board to reopen and reconsider its 1997 order revoking parole and its 1998 order denying re-release on parole and resetting petitioner's release date to 2010 (BAF 33). The board issued a written order denying that request. Petitioner timely sought judicial review of that order. On the board's motion, the Court of Appeals dismissed review on the ground that the order did not adversely affect or aggrieve petitioner; the court did not reach the board's additional argument that the order was not final for purposes of ORS 144.335(1). As already described, this court remanded for reconsideration in light of the decision in *Richards*. On remand, the Court of Appeals concluded in an unpublished order that, in light of *Richards*, petitioner was "adversely affected or aggrieved" by the order denying reopening and reconsideration.

The Court of Appeals therefore addressed the remaining issue presented by the board's motion to dismiss— *i.e.*, whether the order denying reconsideration is a "final order" within the meaning of ORS 144.335(1). On that issue, the Court of Appeals declined to follow *Esperum v. Board of Parole*, 296 Or 789, 681 P2d 1128 (1984), in which this court had held that a board order denying reopening and reconsideration of an earlier final order was not subject to judicial review. The Court of Appeals concluded that *Esperum*, although on point, was not authoritative because it predated *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and had been decided "without the benefit of" the methodology for statutory interpretation that *PGE* announced. The Court of Appeals therefore interpreted the statute anew. Summarily, it concluded that, under a proper *PGE* analysis, a board order denying reconsideration of a prior order "is final within the meaning of ORS 144.335 because the order conclusively disposes of [a] petitioner's

---

[2] The Court of Appeals dismissed review in October 1999. At that time, ORS 144.335(1) (1997), *amended by* Or Laws 2001, ch 661, § 1, precluded judicial review of orders denying re-release on parole and resetting an inmate's parole release date.

request for reopening." The Court of Appeals therefore denied the board's motion to dismiss.

The board petitioned the Court of Appeals for reconsideration. A majority of the panel that considered the petition denied reconsideration, relying at least in part on *Morales v. SAIF*, 339 Or 574, 124 P3d 1233 (2005). Judge Landau dissented, explaining that *Esperum* was controlling and required that the petition for judicial review be dismissed:

> "I do not agree that, merely because [*Esperum*] predates [*PGE*], we are not bound by the court's construction of the applicable statute. The Supreme Court consistently and repeatedly has held that its construction of a statute 'becomes part of the statute, subject only to amendment by the legislature,' *see, e.g., Palmer v. State of Oregon*, 318 Or 352, 358, 867 P2d 1368 (1994), even when the construction predates *PGE. See, e.g., Crocker and Crocker*, 332 Or 42, 48-53, 22 P3d 759 (2001) (1889 and 1940 Supreme Court interpretations of [statute] were 'authoritative[ ]' in the absence of legislative alteration of the provisions interpreted). Nothing in *Morales* * * * proposes to overrule that long line of cases, and the majority errs in concluding otherwise."

On the board's petition, we allowed review to consider whether *Esperum* is controlling and, if not, whether a board order denying reconsideration of an earlier final order is judicially reviewable under ORS 144.335(1).[3]

On review, the parties agree (as did the Court of Appeals) that *Esperum* is on point—that is, that *Esperum* directly addressed and resolved whether a board order denying reopening and reconsideration is a "final order" for purposes of judicial review under ORS 144.335(1). We nevertheless begin by examining the holding in that case. As we will explain, the legislature later amended the statute with an awareness of what *Esperum* held, a fact that bears on the meaning of the statute in its current form.

*Esperum* involved several petitioners who wanted to challenge board orders setting their parole release dates. At

---

[3] The board's petition for review and merits brief also argue that the Court of Appeals incorrectly concluded under *Richards* that the order denying reconsideration adversely affects or aggrieves petitioner. We do not reach that issue.

the time, by statute, a person aggrieved by a final board order setting a release date could seek judicial review of that order by filing a petition in the Court of Appeals within 60 days of the final order. ORS 144.335 (1981), *amended by* Or Laws 1989, ch 790, § 41.[4] By rule, the board also provided a means for it to administratively review its own orders. Administrative review by the board was discretionary—that is, optional—and there were no time limits for seeking that review. OAR 255-80-005 (1982), *amended by* OAR 255-80-005 (1985). Finally, again by rule, the board permitted persons within its jurisdiction to request reopening and reconsideration of a board order. *Former* OAR 255-40-020 (1982), *repealed by* OAR 255-40-020 (1988). Reopening and reconsideration also was discretionary with the board, and the rules placed no time limit on a person's ability to seek reconsideration. *Id.*

None of the petitioners in *Esperum* initially sought judicial review of the board orders setting their release dates. Well after the time to do so had expired, an appellate court decision issued that the petitioners believed established error in the board's procedure for setting their release dates. The petitioners therefore asked the board to administratively review or reconsider the orders setting their parole release dates and to retroactively apply that appellate court decision to them, which the petitioners asserted would require changing their release dates.[5] The board denied the requests, and the petitioners sought judicial review of that denial in the Court of Appeals. Consistently with its earlier decision in

---

[4] As pertinent to the issue in *Esperum*, ORS 144.335 (1981) provided, in part:

"(1) When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole, such person is entitled to judicial review of the final order.

"(2) The order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 60 days of the order for which review is sought. * * *"

[5] Apparently, the petitioners filed, in some instances, requests for administrative review in addition to or instead of requests for reopening and reconsideration. It appears that the requests, however they were denominated, effectively sought reconsideration of board orders that had become final after the time for judicial review had passed. Ultimately, the court's analysis was the same for either form of discretionary administrative reexamination—review or reconsideration—of a board order.

*Cruz v. Board of Parole*, 53 Or App 263, 631 P2d 829, *rev den*, 291 Or 893 (1981) (decision to deny a request for administrative review is not a "final order" for purposes of judicial review), the Court of Appeals dismissed the petitions by order.

On review, this court agreed with the Court of Appeals and held that the board orders were not final orders subject to judicial review. The court observed that the board potentially could respond to a request for administrative review or reconsideration in one of three ways: (1) the board could deny the request outright; (2) the board could allow the request and grant some or full relief by changing its prior final order; or (3) the board could allow the request, but deny relief. *Esperum,* 296 Or at 795-96. The court concluded that the second and third responses—in which the board reexamines a prior order, even if it reaffirms the order in full—resulted in orders that were final for purposes of judicial review. *Id.* at 796-98. The court concluded, however, that the first response—a *denial* of review or reconsideration, which does not reexamine the prior order—was not a final order subject to judicial review. *Id.* at 798.

In reaching that conclusion, the court could not rely on a legislative definition of "final order," because the legislature had not provided one. The court found a reliable guide to legislative intent, however, in another provision of the same statute. Specifically, the court looked to subsection (2), which specified a 60-day time period for seeking judicial review of a final board order.[6] The court reasoned that allowing judicial review of an order *denying* review or reconsideration—*i.e.*, one that declines to reexamine the prior order—would allow a petitioner to frustrate that limitation. *Id.* at 796 ("A contrary holding would effectively eliminate the statutory 60-day petition requirement because an inmate could challenge an initial order, no matter how old, by seeking administrative review and then challenge the denial."). *Esperum* thus is apposite here. It held that a board order denying reopening and reconsideration of a prior final order is *not* a "final order" within the meaning of ORS 144.335(1) (1981). *Id.* at 798.

---

[6] The text of the statute in its then-current form is set out at 342 Or at 689 n 4.

■ As earlier noted, however, the Court of Appeals declined to follow *Esperum* in this case, because *Esperum* predated *PGE* and the interpretative methodology that *PGE* announced. In doing so, the Court of Appeals followed what it understood to be a suggestion in *Morales* that pre-*PGE* decisions are not binding. Specifically, in *Morales* this court declined to adhere to *Buddenberg v. Southcoast Lumber*, 316 Or 180, 850 P2d 360 (1993), a prior case that contained certain statements about the statute at issue in *Morales*. The court explained that *Buddenberg* did not "analyze [the statute] under the now-familiar methodology for construing statutes that this court summarized in [*PGE*]. This case presents the opportunity to do so." *Morales*, 339 Or at 578-79. That passage in *Morales* suggested that the flaw in *Buddenberg* was that it predated *PGE*. In fact, however, *Buddenberg* did not engage in an interpretation of the statute in question at all; rather, its observations about the statute were gratuitous. But the possible suggestion in *Morales* that statutory interpretations predating *PGE* are, for that reason alone, not controlling is refuted by later parts of the decision. *Morales* ultimately relied on a prior authoritative interpretation of the statute in another pre-*PGE* case, *Cutright v. Weyerhaeuser Co.*, 299 Or 290, 702 P2d 403 (1985). 399 Or at 579. The Court of Appeals in this case thus placed undue reliance on the isolated passage that it quoted from *Morales*.

More recently and directly, this court has rejected the proposition that cases predating *PGE* should be discounted or disregarded on that basis. *See Bergerson v. Salem-Keizer School District*, 341 Or 401, 414 n 7, 144 P3d 918 (2006) ("We reject without further discussion petitioner's contention that the [Fair Dismissal Appeals Board] must disregard any cases decided by this court if they predate our decision in *PGE*."). We now reaffirm that rejection. In *PGE*, this court did not fashion new rules for determining the meaning of statutes; nor did the court disavow old or settled rules for doing so. Rather, the court synthesized existing interpretative principles—some codified in Oregon statutes since nearly the beginning of statehood, others reflected in settled case law for many years—into a logical methodology. *PGE*, 317 Or at 610-12. Thus, *PGE* did not change the substantive

principles that apply to statutory interpretation so much as it provided a coherent and predictable order in which to invoke those principles. The absence of a *PGE*-style examination of legislative intent does not deprive a prior statutory interpretation of its ordinary effect as a precedent. Consequently, a decision of this court interpreting a statute can be neither discounted nor disregarded merely because it predates *PGE*.[7]

The fact that *Esperum* predates *PGE* therefore provides no basis, in and of itself, to disregard its interpretation of the "final order" requirement of ORS 144.335(1) (1981). Nor has petitioner provided any other satisfactory reason to abandon *Esperum. See State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005) (party seeking to change a precedent must assume responsibility for affirmatively persuading the court to abandon that precedent). As we have discussed, *Esperum*'s interpretation of the meaning of final order was necessary to its holding and thus authoritative.[8] That interpretation was, moreover, based on a guide to legislative intent—statutory context—that not only is permissible under *PGE*, but also is, along with text, the first guide to consider. *PGE*, 317 Or at 611. Petitioner provides no persuasive argument that *Esperum* was wrongly decided.[9] But even if

---

[7] This court's decision in *State v. Sandoval*, 342 Or 506, 156 P3d 60 (2007), provides an example of a circumstance in which a pre-*PGE* case interpreting a statute was based on common-law principles, not legislative intent. The court therefore concluded that the prior statutory interpretation was not authoritative because it had "nothing to contribute to our present effort, which is to discern what the *legislature* intended with respect to the 'duty of retreat' question." *Id.* at 513 (emphasis in original).

[8] This court has declined to treat a prior interpretation of a statute as authoritative when it is *dictum. See Cutright*, 299 Or at 301 (court declined to rely on *dictum* that was a "questionable pronouncement" in an earlier case about the meaning of a repealed workers' compensation statute); *Safeway Stores v. State Bd. Agriculture*, 198 Or 43, 81, 255 P2d 564 (1953) (*dictum* in prior cases construing a statute is "not within the doctrine of stare decisis").

[9] Petitioner's only basis for urging that *Esperum* was wrongly decided is that the decision failed to consider the definition of "final order" set forth in the Administrative Procedures Act (APA), ORS 183.310(6)(b) (defining "final order" to mean "final agency action expressed in writing" and to exclude tentative or preliminary agency declarations that precede final agency action or do not preclude further agency consideration of the subject matter of the declaration). The APA definition on which petitioner relies, however, did not exist when the legislature first provided for judicial review of "final orders" of the board. *Compare* Or Laws 1973, ch 694, § 24 (initial provision providing for judicial review of "final orders" of the board), *with* Or Laws 1979, ch 593, § 6 (adding definition of "final order" to ORS 183.310). The legislature therefore could not have had intended to incorporate that

this court might decide the issue differently today, the fact remains that *Esperum* is an authoritative interpretation of the statute by this court and ordinarily should be controlling if the statute is unchanged in any pertinent way. *See Wal-Mart Stores, Inc. v. City of Central Point,* 341 Or 393, 399, 144 P3d 914 (2006) (when this court previously, authoritatively has interpreted a statute, later analysis of the statute's meaning focuses on whether the legislature has amended the statute in a way that "expressly declare[s] or necessarily implie[s]" that the legislature intended to alter the prior interpretation (internal quotation marks omitted)).

■    That is not the end of our analysis in this case. Since this court decided *Esperum* in 1984, the legislature has amended ORS 144.335. The holding in *Esperum* remains important, however, because we generally presume that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing on those statutes. *Owens v. Maass,* 323 Or 430, 438, 918 P2d 808 (1996) (citing *State v. Waterhouse,* 209 Or 424, 436, 307 P2d 327 (1957)). The post-*Esperum* amendments reveal that the legislature changed the statute in ways that did not disturb the holding in *Esperum* that an order denying reconsideration is not final for purposes of judicial review.

As we earlier described, *Esperum* drew essentially two conclusions with regard to what constituted a final order for purposes of ORS 144.335(1) (1981): (1) a board order *denying* administrative review or reconsideration of a prior order was not a final order subject to judicial review; and (2) a board order *granting* review or reconsideration was a judicially reviewable final order, whether it altered or affirmed the prior order. 296 Or at 796-98. As the court in *Esperum* further observed, a request for administrative board review did not toll or stay the 60-day period for seeking judicial review under the statute. *Id.* at 798. That fact created a

definition when it first provided for review of final orders of the board in ORS 144.335(1) (1981). When the legislature later added that definition to the APA, the legislature did so in a way that expressly exempts board orders from the definition. Specifically, ORS 183.310 declares that the definitions set forth in it apply only to the provisions of ORS chapter 183. The board, however, is exempted from all of the provisions of ORS chapter 183 that refer to the term "final order." *See* ORS 183.315(1) and (5) (listing provisions of APA that do not apply to board orders).

potential trap for inmates, as this court later described in *Jenkins v. Board of Parole*, 313 Or 234, 237-38, 833 P2d 1268 (1992):

> "Under the law [as it existed when *Esperum* was decided], the time within which to file a petition for judicial review was 60 days from either of two events: the date of the original Board order or, if an inmate requested *and was granted* administrative review, the date on which the order on administrative review issued (whether or not relief was given). An inmate who sought administrative review was faced with a dilemma, because seeking administrative review did not stay the 60-day time limit for seeking judicial review. If the Board denied the request for administrative review after the 60-day period, an inmate who had not filed a petition for judicial review was unable to obtain judicial review of either the original order or the order denying administrative review, because the latter was not an appealable order."

(Citations omitted; emphasis in original.)

In response to that situation, and with an awareness of the board's existing procedures for administrative review, the legislature amended ORS 144.335 five years after this court decided *Esperum. Id.* at 237-40. The legislature did so by adding a clause to ORS 144.335(1) providing that a person aggrieved by a final order of the board may seek judicial review only "after exhaustion of administrative review as provided by board rule."[10] Or Laws 1989, ch 790, § 41. Consistently with that legislative change and the goal of eliminating the choice-of-remedies dilemma for persons seeking to challenge board orders, the board modified its administrative

---

[10] The 1989 amendment to ORS 144.335(1) was part of HB 2250, the omnibus sentencing guidelines legislation. Or Laws 1989, ch 790. Consistently with the then-new sentencing guidelines scheme, the amendment to ORS 144.335(1) added a reference to a board order revoking "post-prison supervision," which was a new sentencing concept introduced as part of the sentencing guidelines. As amended, ORS 144.335(1) (1989), *amended by* Or Laws 1993, ch 402, § 1, provided:

> "When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole or the revoking of post-prison supervision *and after exhaustion of administrative review as provided by board rule,* such person is entitled to judicial review of the final order."

(Emphasis added.)

rules to give an aggrieved person 45 days to seek administrative review of a board order and to provide that an otherwise final board order was not final for purposes of judicial review unless the process for administrative review has been exhausted. *See* OAR 255-080-0001(1) (a board order is not final for purposes of the time to seek judicial review until the inmate/offender exhausts administrative review); OAR 255-080-0001(2) (exhaustion occurs when the board denies review or grants review and either denies or grants relief); OAR 255-080-0005(2) (inmate/offender must request administrative review within 45 days of board's final action on the reviewed issue).[11] The net effect of those revisions to ORS 144.335 and to the board rules is that a denial of *administrative review*, although not itself subject to judicial review, triggers the time for seeking judicial review of an otherwise final order that a petitioner seeks to challenge.

The legislature did not, however, amend ORS 144.335 to alter *Esperum*'s holding with respect to a board order denying *reopening and reconsideration* of a prior final order. That is true even though the legislature was aware of *Esperum* and it specifically altered the statute in response to one aspect of *Esperum*'s holding. But the legislature's inaction with respect to the issue now before us was just that— inaction. No new law was enacted; there was no legislative action at all on the point at issue.

Petitioner nevertheless argues that the legislature made later changes to the statute that reflect a policy choice to expand final orders to encompass board orders denying reopening and reconsideration, and thus to permit judicial review of those orders. Specifically, in 1993, the legislature retained the wording in ORS 144.335(1) that provided for review of a final order "related to the granting, revoking or discharging of parole," but, in subsection (2), narrowed the scope of that wording with an extensive list of exceptions. *See* ORS 144.335(2) (1993), *amended by* Or Laws 1995, ch 108, § 3; Or Laws 2001, ch 661, § 1 (listing board orders that, notwithstanding subsection (1), were not subject to judicial

---

[11] Although the rules have been renumbered since their original amendment in response to the 1989 legislative changes, their essential substance has remained unchanged. We therefore cite the current version of the board's rules.

review). Then, in 2001, the legislature amended the statute again to delete those exceptions and to remove the qualification in subsection (1) that the final order must relate to a grant, revocation, or discharge of parole. *See* 342 Or at 686 n 1 (setting out ORS 144.335(1) in its current form, which reflects the 2001 amendments). In petitioner's view, that statutory expansion of the scope of reviewable final orders demonstrates "at a minimum the lack of an outright legislative stamp of approval of *Esperum*."

Petitioner's argument is misdirected. The legislature's approval, disapproval, or indifference (for that matter) to this court's holding in *Esperum* is of no moment. What matters is whether the legislature's post-*Esperum* amendments changed the statute in such a way as to make a different policy choice—*i.e.*, that a board order denying reopening and reconsideration is judicially reviewable. *See Wal-Mart Stores, Inc.*, 341 Or at 399 (prior statutory interpretation must be expressly or necessarily changed by later amendments). The post-*Esperum* amendments to ORS 144.335 worked no such change. *Esperum* held that a board order denying reopening and reconsideration is not a final order, period. The court's reasoning did not turn on the statutory qualification that only final orders "related to the granting, revoking or discharging of parole" were subject to review. ORS 144.335(1) (1981). It turned instead on the procedural reality that a denial of reconsideration left the prior final order undisturbed and that permitting judicial review to be triggered by such a denial would nullify the 60-day time limit that the legislature placed on seeking judicial review. Thus, the fact that the legislature eliminated that qualification in 2001 does not imply that the legislature intended to provide for judicial review of orders denying reconsideration where, under *Esperum*, no such right existed before.

For those reasons, we conclude that *Esperum* remains controlling and that the Court of Appeals erred in disregarding it. The petition for judicial review should be dismissed.

The order of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.